## COMM'RS OF SEDGWICK COUNTY v. H. W. BAILEY.

1. TITLES OF BILLS, AND LAWS; *Constitutional Law.* The constitutional provision that "No bill shall contain more than one subject, which shall be clearly expressed in its title," is mandatory; and if the legislature should clearly violate this provision by putting something in the body of an act clearly not embraced in the title thereof, or wholly foreign to the title, it would be the duty of the courts to declare such portion of the act void.   If any bill, while pending in the legislature, should

in any of its stages be in conflict with this provision, it would be the imperative duty of the legislature, on or before the final passage of the bill, to correct it so as to make it harmonize with said provision, and if they should fail to do so, the bill itself, or some portion thereof, would be void.

2. ——— *Ch.* 97, *Laws of* 1872; *Sec.* 6 *held void.* Where the legislature, on March 3d, 1868, passed an act entitled "An act defining the boundaries of counties," and afterward, on the 29th of February, 1872, passed another act entitled "An act amendatory and suplemental to an act entitled 'An act defining the boundaries of counties,' approved March 3d, 1868," and by ? 5 of the last-mentioned act created the new county of Harvey, taking a portion of the county of Sedgwick and placing it within the boundaries of Harvey, and by ? 6 of said last-mentioned act provided, by an arbitrary rule, for taxing the territory detached from Sedgwick county and attached to Harvey county, to assist in paying certain old debts of Sedgwick county, *held,* that the matters contained in ? 6 were not expressed in the title to the bill, and therefore that said ? 6 is unconstitutional and void.

## Original Proceedings in Mandamus.

On the 6th of November 1873 the plaintiff made application to the Chief Justice of this court for an alternative writ of mandamus. Said application was based on the affidavit of the county attorney of Sedgwick county, alleging among other things, that the entire length of the Wichita & Southwestern Railroad between the town of Newton and the town of Wichita is 26¼ miles; that when said railroad was constructed it was wholly within Sedgwick county; that by § 5 of ch. 97 of the Laws of 1872, (approved February 29th, Laws of 1872, p. 184,) a portion of said Sedgwick county was detached, and the territory so detached was annexed to and made a part of the county of Harvey, a new county created by said ch. 97; that the town of Newton, by such change in the boundary of Sedgwick county, and by force of said § 5, became a town of said Harvey county; that of said 26¼ miles length of said W. & S.W. railroad, 9⅞ miles thereof was now situated in said Harvey county, and 15¾ miles thereof in said Sedgwick county; that said Sedgwick county had duly and legally issued its bonds in the sum of $200,000 to the W. & S.W. Railroad Co. in payment of its

subscription to the stock of said company in that amount; that the interest on said bonds, at the rate of seven per cent. per annum, was payable semi-annually on the 1st of January and 1st of July; that the interest on such bonds to become due in 1874, was $14,000; that by § 6 of said ch. 97 of the Laws of 1872 said "territory detached from the county of Sedgwick, and made a part of the county of Harvey," should "pay the same proportion of said ($200,000) indebtedness as the length of the W. & S.W. railroad within the county of Harvey bears to the entire length of said railroad between Newton and Wichita;" that the proportion of said $14,000 interest for the year 1874 to be paid by Harvey county was $5,166.98; that the defendant *H. W. Bailey* was the county clerk of said Harvey county; that on the 1st of September, 1873, the county clerk of Sedgwick county had duly certified to the defendant, as county clerk of said Harvey county, said sum of $5,166.98 "as the amount of taxes to be levied upon the said territory detached from said county of Sedgwick and made a part of said county of Harvey to pay the said interest on the said bonds accruing on said 1st day of January and the 1st day of July 1874, and delivered said certificate to said defendant; that said defendant had neglected and refused, and still neglects and refuses to apportion said amount upon the taxable property situated in the territory detached from Sedgwick county as aforesaid and insert the same so apportioned in the tax-roll of the county of Harvey," etc. An alternative writ was allowed, commanding *Bailey* to apportion said sum of $5,166.98 upon the taxable property in said detached territory, and insert the same in the tax-roll of Harvey county to be collected on the assessment of the year 1873, or to show cause, etc.* *Bailey* appeared and moved to quash the

[* AN action of this same title and character, and between these same parties, was determined in this court at the July Term 1873, and is reported in 11 Kas., 631. That action was commenced in December 1872, to compel the defendant *Bailey* to apportion the amount of $5,166.98 of the $14,000 interest on said $200,000 bonds payable in the year 1873 on the taxable property in said detached territory and insert the same in the tax-rolls of Harvey county to be collected upon the assessment thereof for the year 1872. To the alternative writ issued in that case, *Bailey* answered, setting up four several

alternative writ on the ground that said § 6 of said ch. 97 of the Laws of 1872, which undertakes to prescribe the duty which it is sought by the writ to compel him to perform, is unconstitutional and void. The case was heard and decided on this motion.

*C. S. Bowman*, and *J. J. Barker*, for defendant, in support of the motion to quash the alternative writ:

1. We contend that § 6 of the act mentioned and referred to in the alternative writ of mandamus, "An act entitled 'an act amendatory of, and supplemental to, an act entitled 'an act defining the boundaries of counties,' approved March 3, 1868," (Laws of 1872, ch. 97, p. 183,) is in direct conflict with § 16 of article 2 of the constitution, which provides that, "no bill shall contain more than one subject, which shall be clearly expressed in its title." *The People v. Dehaney*, 20 Mich., 349. The provisions of the fundamental law that the subject *shall* be expressed, and *clearly* expressed, are mandatory. Every word contained in the constitution must have a meaning, and intend what it says: 5 Ind., 567; 3 Seld., 83; 9 Wheat., 188; 7 Ind., 49; 2 Dallas, 308; 42 N. Y., 404; 43 Ala., 229; Potter's Dwarris, p. 354.

The framers of the constitution classified the important subjects of legislation under appropriate heads. They assumed that different subjects of legislation existed; and in the constitution the subject of counties, their organization, etc., was wisely kept entirely separate and distinct from the subject of finance and taxation: Const., articles 9 and 11; 27 Ind., 226. In determining whether more than one subject is contained in act, the true test is, "Might this identical matter reasonably be looked for under this particular head?" 27 Ind., 227; 16 Mich., 277; 42 Mo., 591; 4 La. An., 268;

defenses, each of which was considered and determined by the court on the final hearing. But no one of the defenses in that action raised the question which is raised in *this* action, (to-wit, whether § 6 of said chapter 97 of the Laws of 1872 is constitutional,) nor was this question suggested even in the briefs of counsel in that case. (11 Kas., 632 to 635.) The court did not consider any question in that case except those raised and presented on the answer of the defendant, and not regarding those defenses as sufficient, awarded a *peremptory* mandamus.—REPORTER.]

4 Minn., 524; 22 Barb., 643; 38 N. Y., 195; 12 N. Y., 146. The title must cover the subject of the act: 22 Barb., 642; 16 Mich., 279; 14 Ind., 240, 195; 42 Mo., 578; 32 Ill., 181; 55 Barb., 259; 34 How. Pr., 508; 12 N. Y. 146; 6 Kas., 255.

And even if we should concede that the title of the act in question *might* have been made sufficiently comprehensive to cover the provisions of § 6, the fatal objection would still remain that this was not done: Cooley's Const. Lim., 149; 16 Mich., 278; 11 Ind., 201; 9 Ind., 363; 41 Mo., 39; 32 Ill., 181; 22 Barb., 642; 40 Barb., 408; 14 Ind., 196; 12 Geo., 41.

The legislature may make the title of an act as restrictive as it pleases, and the courts cannot enlarge its scope. The constitution has made the title the conclusive index to the legislative intent: Cooley's Const. Lim., 149; 7 Ind., 49; 5 Ind., 567; 42 Mo., 592. "When a statute which applies to the state at large, contains provisions of a local or private nature, not disclosed by its title, the later provisions are void:" 43 N. Y., 10. Nothing can be incorporated in an amendment which was not included in the title of the original act. 14 Ind., 198.

2. We insist that § 6 of the act mentioned in the alternative writ of mandamus is in direct contravention of §17 of article 2 of the constitution, which provides, "All laws of a general nature shall have a uniform operation throughout the state, and in *all* cases where a general law can be made applicable, no special law shall be enacted." 5 Ind., 4.

Section 6 of the act in question specially prescribes the duties of certain officers in a special case. This special provision cannot find a place in a general statute: 43 N. Y., 10; 54 Barb., 169; 38 N. Y., 193; 34 How. Pr., 511. And it is the duty of the courts and not the legislature to say whether a general law can be made applicable. 7 Ind., 4; 34 How. Pr., 511.

*H. C. Sluss,* county-attorney, for plaintiff:

"No bill shall contain more than one subject, which shall be clearly expressed in its title." So says the constitution; and we deem it unnecessary for the purposes of this case to discuss the question as to whether this provision is to be considered *mandatory,* or *directory.* Respectable authorities however hold it to be merely *directory* of the mode of legislation: (4 Cal., 388; 3 Ohio St., 475, 484; 10 Cal., 315; 6 Ohio St., 176, 180.) It seems to be pretty well settled that the subject of a legislative enactment may be broad and comprehensive "as the common law itself," and that the legislature in its discretion may determine how broad it may be, or how restricted it shall be, and with what degree of clearness and particularity that subject shall be expressed in the title of the enactment: Cooley's Const. Lim., 144; *Bowman v. Cockrill,* 6 Kas., 311, 335. The *subject* expressed in the title of the act in question (ch. 97, laws of 1872,) is, to amend and add to an act entitled "an act defining the boundaries of counties." It is consistent with this subject to enlarge, diminish, or change the boundaries of counties then existing, and as a result of such change to form and define the bounds of the new and additional counties. The original act (ch. 24, Gen. Stat.,) declared into what counties the state was divided, gave names to them, and defined their boundaries. To change this to some extent, was the subject and purpose of the act in question. This subject is comprehensive enough to include the provisions to create the county of Harvey, and the purpose to create the county of Harvey is sufficiently clearly expressed in the title of the act: Cooley's Const. Lim., 146; 8 Iowa, 82; 12 Iowa, 1. It was legitimate for the legislature to incorporate in the act all such exceptions, saving-clauses, and provisions which it might deem essential to protect vested rights, to effectuate the object of the act, or to provide for any contingency that might arise in consequence of the new state of affairs produced by the passage of the act itself, so that such provisions were not'

entirely inconsistent with and repugnant to the general sub-
ject and purpose expressed in the title: 26 Iowa, 340;
13 Mich., 481; 2 Iowa, 280.   There is nothing contained or
enacted in § 6 of the act in question inconsistent with or re-
pugnant to the subject of creating the new county of Harvey,
or inconsistent with the subject of amending and adding to
the original act defining the boundaries of counties.   There
is nothing contained in § 6 that would require distinct and
independent legislation to effect.   If it was legitimate or ap-
propriate for the legislature to make the provision contained
in § 6 at all, it was legitimate and proper that it should be
done in and as a part of the very act creating the county of
Harvey; and that it had the power, there is no question: Dil-
lon Munic. Corp., §§ 30, 36, 37, 127 to 129; Cooley's Const.
Lim., 191 to 193.

2. As to the second proposition advanced in defendant's
brief, we refer to *The State v. Hitchcock*, 1 Kas., 178, which
we think sufficiently disposes of the point.

The opinion of the court was delivered by

VALENTINE, J.: On March 3d 1868 an act of the legisla-
ture was passed entitled "An act defining the boundaries of
counties." (Gen. Stat., 228.)   Under this act the boundaries
of 79 counties were defined and established.   In 1872 an-
other act was passed entitled, "An act amendatory and sup-
plemental to an act entitled 'An act defining the boundaries
of counties,' approved March 3d 1868." (Laws of 1872, page
183.)   Under this act the boundaries of four counties were
defined and established.   Two of these counties were created
by the act, and the other two simply had their boundaries
changed.   Section 5 of the act created the new county of
Harvey, and in doing so took a portion of the county of
Sedgwick and placed it within the boundaries of the county
of Harvey.   Section 6 reads as follows:

"SEC. 6. The territory detached from the county of Sedg-
wick and made a part of the county of Harvey by this act,
shall not in anywise be relieved from its obligation to pay its

proportion of all indebtedness of Sedgwick county which may be occasioned by the issue of bonds for or in aid of any railroad, which issue of bonds has heretofore been voted by the said county of Sedgwick, and the territory so detached shall pay the same proportion of said indebtedness as the length of the Wichita and Southwestern railroad within the county of Harvey bears to the entire length of said railroad between Newton and Wichita. The county clerk of Sedgwick county shall annually certify to the county clerk of Harvey county the amount of the taxes to be levied on territory so detached, to pay the interest and principal of said indebtedness as the same shall become due, and the county clerk of Harvey county shall apportion the same upon the taxable property situated in said detached territory and insert the same in the assessment-roll of his county, and the same shall be collected as other taxes, and when collected shall be paid over by the county treasurer of Harvey county to the county treasurer of Sedgwick county, to be applied in the same manner as if collected by him." (Laws of 1872, pp. 184, 185.)

The first part of § 16 of article 2 of the constitution of Kansas reads as follows: "No bill shall contain more than one subject, which shall be clearly expressed in its title." Now it is claimed that said § 6 is in conflict with this provision of the constitution, and therefore void. This is the only question involved in this case. About twenty-seven states have constitutional provisions similar to that of ours. In two of these states, Ohio and California, the provision is considered merely as directory to the legislature. But in all the others in which decisions upon the subject have been made, the provision is considered as mandatory. And it ought to be so considered. It would be a dangerous doctrine to announce, that any of the provisions of the constitution may be obeyed or disregarded at the mere will or pleasure of the legislature, unless it is clear beyond all question that such was the intention of the framers of the instrument. It would seem to be a lowering of the proper dignity of such an instrument to say that it descends to prescribing mere rules of order in unessential matters, which may be followed or disregarded at pleasure. Judge Cooley uses the following language: "The fact is this, that whatever constitutional

provision can be looked upon as directory merely, is very likely to be treated by the legislature as if it was devoid even of moral obligation, and to be therefore habitually disregarded. To say that a provision is directory, seems with many persons to be equivalent to saying that it is not law at all. That this ought not to be so, must be conceded. That it is so, we have abundant reason and good authority for saying. If therefore a constitutional provision is to be enforced at all, it must be treated as mandatory." (Cooley's Const. Lim., 150.) Now whether what Judge Cooley says is true or not, we have no doubt, both upon reason and authority, that the said constitutional provision should be considered as mandatory; and whenever the legislature clearly violates the provision by putting something in the body of an act which is clearly not embraced in the title thereof, or is wholly foreign to the title, the courts should declare such portion of the act void.

The language of this constitutional provision differs in some respects in the different states. We shall notice some of these differences. In some of the states the word "bill" is used where in others the word "act," or "law," is used. But as the question is usually presented to the courts it can probably make but little if any difference which one of words is used. Each as presented to the courts means the final determination of the legislature upon the particular subject embraced in such "bill," "act," or "law." The word "act," is probably the best word to use, for it includes no action of the legislature or of any person prior to the final passage of the act by the legislature, and it includes the whole of the act, nothing more, and nothing less. The word "law" is probably the worst word to use, for a portion of any act may be law, as well as the whole of the act. "Law," however, as here used, is intended to be synonymous with act. Our constitution, as well as those of Ohio, Nebraska, Pennsylvania, New York, Wisconsin, and perhaps some of the other states, uses the word "bill." The word "bill" means the bill as it is first introduced into one of the houses of the legislature, and as it

may at any time be, in any of its stages, until it is finally passed by both houses of the legislature, signed by the officers of each house, signed by the governor, and filed away by the secretary of state, as the highest evidence of what the law is. When the bill is thus filed it is called the "enrolled bill." It is then the embodiment of the "act," the "law," that finally passed the legislature, and should contain but one subject, which subject should be clearly expressed in its title. In our opinion said constitutional provision is an imperative mandate to the legislature, commanding them that "No bill shall contain more than one subject, which shall be clearly expressed in its title;" and if any bill in any of its stages should be in conflict with this provision, the legislature should, on or before its final passage, correct it, so as to make it harmonize with said provision; and if the legislature should fail to so correct it, the bill itself, or some portion thereof, would be void.

In Florida, Indiana, Iowa, Nevada, and Oregon, their constitutional provision upon this subject is, that every act or law "shall embrace but one subject, *and matters properly connected therewith*, which subject shall be expressed in the title." [In Florida and Nevada, the language is, "which subject shall be *briefly* expressed in the title."] In the Kansas constitution the above words in italics are omitted. Hence in Florida, Indiana, Iowa, Nevada, and Oregon, the legislature may, without violating their constitution, place in the body of the act *matters properly connected with the subject expressed* in the title thereof, (although these matters themselves may not be expressed in the title,) while in this state, under our constitution, such a thing could not be done. This difference will account for certain decisions made in some of the above-mentioned states. These are the only differences of which we shall take notice.

The next question is, whether said § 6, or any part thereof, is not expressed in the title of the act. We suppose there can be but one answer to this question. Neither the act of 1868, nor the act of 1872, mentions any subject except that of

39—13 KAS.

"defining the boundaries of counties." This title is probably broad enough to authorize the changing of county lines, the establishing of county lines, the creation of the boundary lines of new counties, substantially the creation of new counties; but still it can do nothing more than to authorize the defining and establishing of the territorial boundaries of either old or new counties. It cannot authorize the establishment of an arbitrary rule, or indeed of any rule, for taxing the inhabitants of that portion of Sedgwick county attached to Harvey county. The title of the act is not broad enough to include assessment or taxation of any kind. Of course, the legislature could have passed a bill under a title broad enough to include all that is contained in said §§ 5 and 6, and such bill would have been valid; but they did not do it. Who would think of looking for any kind of assessment or taxation under such a title as that prefixed to said ch. 97 of the laws of 1872? And who would think of finding under such a title an arbitrary rule of assessment and taxation, differing in almost every particular from the general rule established for the other counties in the state? As the legislature will frequently be called upon to change the boundary lines of counties, it would probably be better for them to pass a general law for the assessment and collection of taxes from territory detached from one county and attached to another, where one county is more in debt than the other; otherwise they will have to make the title to the act in each case broad enough to include assessment and taxation to pay previous indebtedness, as well as to include the changing of boundary lines.

Whether the rule attempted to be established for taxing the territory detached from Sedgwick county and attached to Harvey is just, or not, we cannot tell. It would seem that if said territory should continue to assist in paying the old debts of Sedgwick county it ought to be relieved from assisting to pay the old debts of Harvey county. And it would further seem that if said territory is still to continue to assist in paying the old debts of Sedgwick county, it ought in doing so, to pay as a property tax the same percentage on the value

of the property within said territory which the territory still remaining in Sedgwick county does on its property. The rule that, "the territory so detached shall pay the same proportion of said indebtedness as the length of the Wichita & Southwestern Railroad within the county of Harvey bears to the entire length of said railroad between Newton and Wichita," may be unjust, and it is certainly very arbitrary. We cannot however take judicial notice that it is unjust, and therefore could not in the absence of evidence showing the same to be unjust declare that the rule is unconstitutional for that reason. (*Comm'rs of Sedgwick Co. v. Bailey*, 11 Kas., 631, 635.)

Section 5 of said act defining the boundaries of Harvey county and detaching a portion of the territory of Sedgwick county, and attaching it to the county of Harvey, does not depend for its validity upon section six of the act which provides for levying and collecting taxes from said detached territory to pay certain old debts of Sedgwick county, and therefore the whole of said § 6 may be void and the whole of § 5 be valid. Hence no argument can be made that it was necessary to pass § 6 in order to pass § 5.

This provision of the constitution found in the constitutions of the most of the states is elaborately discussed in Sedgwick's Statutory and Constitutional Law, (2d ed.) See also Cooley's Const. Lim., 141 to 151.

The motion to quash the alternative writ of mandamus will be sustained, and judgment rendered for the defendant for costs.

All the Justices concurring.