THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. THE BOARD OF COUNTY COMMISSIONERS OF KEARNY COUNTY.

| 58 | 19 |
|----|-----|
| 63 | 273 |
| 58 | 19 |
| e70 | 254 |
| c70 | 255 |

No. 9294.

1. ACTION ON COUNTY WARRANT—*not maintainable till payment demanded and refused.* An action cannot be maintained upon a county warrant until the warrant has been presented at the county treasury and payment thereof has been refused.

2. PROVISIONAL COUNTY OFFICERS—*none can act or be paid but commissioners, clerk and sheriff.* During the period of temporary organization of a county, from the appointment by the Governor of commissioners, clerk and sheriff as provisional officers, until the first election for county officers and the canvass and determination of the result of the same, the county is entitled to no other officers than such provisional appointees; and the acts of all persons assuming to hold other county offices are null and void, and for the performance of the same no compensation can lawfully be paid.

3. TRANSCRIPT OF RECORDS FOR NEW COUNTY — *under ¶ 1591, Gen. Sta'. 1889, cannot be procured during provisional organization.* Under paragraph 1591 of the General Statutes of 1889, transcripts of records can be procured and paid for by a newly organized county only where such county has been attached to another for municipal purposes, and not then during the temporary organization of the county, but only by "the county clerk chosen at the first election, after having duly qualified according to law."

4. TITLE OF ACT — *to attach Kearny County to Finney, act itself attaching it to Hamilton, act void.* Chapter 132, Laws of 1887, which by its title purports to attach Kearny to Finney County, but which in the body of the same attaches it to Hamilton County, is unconstitutional because of such contradiction between the title and the subject of the act.

5. DE FACTO MUNICIPALITY — *no existence where face of law shows not municipality de jure.* A *de facto* municipal organization cannot be said to exist, where the evidence of its non-existence *de jure* appears upon the face of the law.

Error from Kearny District Court. Hon. A. J. Abbott, Judge. Opinion filed April 10, 1897. *Affirmed.*

*A. A. Hurd* and *Stambaugh & Hurd,* for plaintiff in error.

*G. M. Kelso,* County Attorney, and *Peters & Nicholson,* for defendant in error.

DOSTER, C. J. Kearny County was created in 1887, by an act of the Legislature, in the usual form, defining its boundaries. § 4, ch. 61, Laws 1887. At the same session an act was passed which sought to attach this county to another for judicial purposes. The title of this act and the act itself are in the following words :

"AN ACT to attach the counties of Haskell and Kearny to Finney County, and the county of Stanton to the county of Hamilton, and the county of Garfield to Hodgeman County, and the county of Grant to Stevens County, and the county of Gray to Ford County, for judicial purposes."

"SECTION 1. The county of Haskell is hereby attached to the county of Finney, the county of Grant is hereby attached to the county of Stevens, the coun-

ties of Stanton and Kearny are hereby attached to the county of Hamilton, the county of Garfield is hereby attached to the county of Hodgeman, and the county of Gray is hereby attached to the county of Ford, for judicial purposes."

Kearny County became, by the act creating it, what is known as an "unorganized county." By various statutory provisions, not necessary to quote here, an unorganized county, when attached to an organized one for judicial purposes, becomes a municipal township of the county to which it is attached. It was assumed that the act above set forth attached Kearny to Hamilton County for judicial purposes, and that it thereby became Kearny Township of that county. On the strength of this assumption, township officers were elected, and township indebtedness was contracted, the validity of which is one of the questions in this case. In March, 1888, by proceedings duly had under the general law, Kearny County became an organized county. The Governor appointed, as the temporary officers, W. J. Price, S. R. Hibbard and H. A. W. Corfield, county commissioners, J. H. Waterman, county clerk, and R. F. Thorne, sheriff; upon whose qualification according to law the organization became complete. An election for the full set of county officers, including, of course, successors to the provisional appointees, was called for July 21, 1888. These provisional officers refused to canvass all the returns of this election, and refused to make any determination or record of the result. An alternative writ of mandamus was issued by the judge of the district court, commanding them to make such canvass and determination, or show cause for not doing so. This writ was ignored by them. It was followed by a peremptory writ, which was likewise ignored, and the returns were not fully canvassed and a record of the result made until

the following January, when these duties were performed by the officers elected at the general election in November preceding. During this time, and until after the election in the following November, the temporary officers continued to hold and act by virtue of their appointment by the Governor. During the period of their incumbency, from March to November, 1888, they issued many thousand dollars of county warrants. The record before us shows that, up to the first of October, 513 of these warrants were issued, twenty-two of which, aggregating eight thousand dollars, have passed by assignment to plaintiff in error and are involved in this suit. An action upon these warrants was begun by plaintiff in error, as plaintiff below, which resulted in an adverse judgment, to reverse which this proceeding is instituted.

A county warrant is not a negotiable instrument. It cannot pass to innocent holders, as do municipal bonds, free from defenses. *Comm'rs of Leavenworth Co. v. Keller*, 6 Kan. 510–518 ; *Wall v. Monroe Co.*, 103 U. S. 74. A general objection made to the maintenance of an action on all these warrants is, that they have never been presented to the county treasurer for redemption, and payment thereof has never been refused. Such demand for payment is a prerequisite to a suit upon the warrants. The whole scheme of county organization and administration proceeds upon the theory of payment of demands only after they have been audited by the commissioners and presented to the treasurer. Elaborate provisions as to form and verification of accounts, time of presentation and allowance thereof and issuance and payment of warrants thereon, are to be found in the statutes. True, it is nowhere said that an action may not be maintained upon a county warrant before presenting it for payment, nor is it

1. Action on county warrant not maintainable, when.

said that an action may not be maintained against a county before presentation of the account to the commissioners for their allowance ; but the necessary implication from the various provisions which mark out a procedure for both claimant and officer is, that an account must be presented for allowance and, if allowed, the warrant issued thereon must be presented for payment.   To subject a county to liability upon demands never presented for settlement or warrants never presented for payment would be intolerable. The general rule between debtor and creditor is, that, where a place of payment has been specified in the contract or provided by law, demand and payment must be made there ; and this rule has been enforced both in the case of private obligations and of municipal securities like those in suit. *Varner v. Nobleborough*, 2 Greenl. ( Me.) 112 ; *Pease v. Cornish*, 19 Me. 193 ; *Dalrymple v. Whittingham*, 26 Vt. 345 ; *Robinson v. Cheney*, 17 Neb. 673.

It may be said, however, that these warrants were presented for payment.   Not so.   They were presented to one W. P. Loucks, who styled himself county treasurer, but in every such case presentation was made during the temporary and formative period of the county.   Not until its inchoate political condition had ripened into a *status* of permanent organization, was Kearny County entitled to a treasurer.

"At that time the county had no county attorney, no clerk of the district court, no county treasurer, no register of deeds, no coroner, no superintendent of public instruction, no county surveyor, and no probate judge ; and of course nothing could be done in the county requiring the services of such officers.   The organization at most, is only a temporary or provisional organization, and for special and limited purposes, and the completed and perfected organization must be brought into existence at some time in the

future.''    *The State ex rel. v. Haskell Co.*, 40 Kan.
67, 68.

The only officers allowed to a county during this
period are a board of county commissioners, a clerk,
and a sheriff.    These are appointed by the Governor.
By what authority Mr. Loucks assumed to act as
treasurer, we do not know.    The record is silent as to
that.    Certain it is, there was no law under which he
could rightfully act, or under which any one could
act, until after the election of July 21, the canvass
of the returns and determination of the result, and
the succession of the provisional by the permanent
organization.    Except the election, with its unascer-
tained and barren result, none of these events trans-
pired until after the form of presenting these warrants
to this self-created and intrusive functionary had been
gone through.

When the different warrants sued upon are exam-
ined in detail, the invalidity of all of them, upon more
specific grounds, becomes apparent.    Two of them,
aggregating $1,457.94, were issued '' in redemption of
Kearny Township warrants.''    The question of the
validity of these township warrants, and, *per conse-
quence*, of the county warrants issued in redemption of
them, rests upon the act of 1887 attaching Kearny
County for '' judicial purposes,'' or, summarizing and
explaining the effect of such act, attaching it for mu-
nicipal purposes.    Kearny did not by
this act become attached to either Ham-
ilton or Finney County.    The act is in
flagrant disregard of the constitutional provision
which declares that '' no bill shall contain more than
one subject, which shall be clearly expressed in its
title.''    The title declares the purpose of the act to be
to attach Kearny to Finney County.    The body of the
act, in direct violation of its declared purpose, attaches

4. Act attaching
   Kearny to
   Hamilton void.

it to Hamilton County. The title of a bill is intended to be an index to its subject. The constitution says that the subject shall be clearly expressed in the title. As remarked in *The State v. Bankers, etc., Ass'n*, (23 Kan. 501) : " The constitution has said that the title must be an index to the law, and the courts may not sanction as a valid enactment any part of a statute to which the finger of the title does not point." The title of this act indicates that Kearny is to be attached to Finney County, but the act ignores the index, and attaches it to Hamilton. The constitutional provision in question has repeatedly been declared mandatory, and enforced as such. *Comm'rs Sedgwick Co. v. Bailey*, 13 Kan. 600 ; *Swayze v. Britton*, 17 id. 625 ; *The State v. Barrett*, 27 id. 221 ; *In re Wood*, 34 id. 645 ; *Clarke v. Comm'rs Wallace Co.*, 54 id. 634.

Cases quite like the one under consideration have been decided by other courts in conformity to the view we take of the act in question. When the title of an act related to the salaries of certain state officers, naming Justices of the Supreme Court and other attaches of State Government, a provision reducing salaries of members of the Legislature was held invalid. *State v. Hallock*, 19 Nev. 384 ; *State v. Hoadley*, 20 id. 317. A title referring to state lands in a particular county, was held to not sustain a provision in the act relating to lands in another county. *Wilcox v. Paddock*, 65 Mich. 23. When the title indicated the organization of a certain town, named, it was not allowed to support a bill dividing the town and making a new one. *State v. Kinsilla*, 14 Minn. 524. A bill providing for the relief of certain towns, naming them, was held not valid as to a town not named in the title. *Harris v. Niagara County*, 33 Hun ( N. Y.), 279. It has frequently been decided that the purpose of this constitutional provision

is to require the title of an act to be such as will inform members of the Legislature and the public of the object of the enactment, and that, although it is not necessary for it to indicate the methods by which this object is to be attained, yet, if the title does not fairly express such object or is deceptive in its expression, the legislation is repugnant to the constitutional requirement.

The plaintiff in error opposes to the force of this constitutional provision the claim that Kearny Township was a *de facto* organization, and that

5. De facto municipality no existence, when. its acts and doings are not, therefore, open to collateral attack.   There can be no such thing as a *de facto* municipal organization where the evidence of its non-existence *de jure* is patent from the face of the law itself.   In *School District v. The State* (29 Kan. 57), the qualified inhabitants of a certain territory, acting in conjunction with the county superintendent of a county in which they did not reside but in which all, in good faith, supposed they resided, organized a school district, which was held to be a district *de facto*.   In that case, however, the error inhered, not in the very law creating the district, but in another law, and even then could be ascertained only by a measurement and calculation of land areas.   A political organization such as a county owes its life to the legislative will alone.   If that will has not been exerted, the organization can have no existence, *de jure* or *de facto*.   In the case of *In re Wood* (34 Kan. 648–9), a question quite like the present one arose, involving the political *status* of Meade County, in the consideration of which it was remarked of that county :

" Before it could have a municipal organization as a township, and be entitled to township officers, it must have been attached to an organized county for

judicial purposes. If it was not a municipal township, there could not be any township officers.''

'' We must therefore hold the provision to be invalid, and that the county of Meade was not at the time when the commitment was issued, attached to Comanche County, or to any other organized county of the State. It follows that the county had no municipal organization, nor any township officers, and that John Jobling, who assumed to act as justice of the peace of that county, and who issued the process under which the petitioner is held, was without authority to do so.''

Kearny County, therefore, not having been attached to any other county, had no municipal existence. It could have no officers and could contract no debts. It had no valid scrip or warrants to be funded or redeemed when it came into existence as an organized county.

Seven more of the warrants sued on, aggregating $5,701.08, are clearly illegal. They were issued July 2, 1888, during the provisional organization, for procuring transcripts of records of real-estate transfers, liens, etc., from Hamilton County, to which it was supposed Kearny had been attached. The law which it was assumed gave authority to incur indebtedness is paragraph 1591, General Statutes of 1889. That law, however, applies only to '' counties which shall have been previously attached to another county for municipal purposes.'' Inasmuch as Kearny County had not been attached to any other county for such purposes, the expense incurred was clearly outside the terms of the act, and constituted no item of charge against the county Furthermore, it was not the duty of the provisional county clerk to procure these transcripts. The act in question, by its plain terms, imposes that duty upon '' the county clerk chosen at the first election, after having qualified according to law.'' He alone

3. Transcript of county records not procured, when.

was authorized to perform such duty and incur such expense, and he alone could prefer a claim for such services.

Another of these warrants was issued, during the period of temporary organization, in payment for services of a "county attorney." No such officer is provided for or allowed to a county during such inchoate and transitory period of existence, and therefore no warrant could be legally drawn in payment for his services or salary.

2. Provisional county officers.

Another of the warrants was issued in payment "for livery furnished deputy sheriffs and road viewers." No such items constitute legitimate charges against any county. The sheriff and his deputies are paid mileage and fees; the road viewers, a *per diem*. None of them can, in the performance of his duties, hire livery conveyances and charge the cost of them to the county.

Others of these warrants are, upon different grounds, likewise objectionable, and other general objections to all of them, as a whole, are strenuously urged with strong show of reason; but we deem it unnecessary to continue our examination into their validity.

For the reasons given, none of them can be recovered upon, and the judgment of the court below will, therefore, be affirmed.