THE CITY OF TOPEKA v. JAMES DWYER *et al.*

No. 14,079.     (78 Pac. 417.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS — *Annexation of Territory.* A statute authorizing municipal corporations to enlarge their corporate areas by the annexation of territory is, to that extent, one for the organization of such corporations.

2. ———— *Completed Proceedings Cannot be Questioned Collaterally.* Completed proceedings for the enlargement of the corporate area of a city, authorized by an act of the legislature, are not open to collateral attack in a prosecution for the enforcement of an ordinance of the city within the annexed territory so far as mere defects, informalities and irregularities, questions of good faith and good judgment, the finding of necessary facts, the determination of disputes of fact and like matters are concerned.

3. ———— *Nor Can the Constitutionality of the Statute be so Attacked.* The constitutionality of a statute for the enlargement of the corporate areas of cities, apparently regular in form and fairly indicative of the legislative will, cannot be attacked collaterally in a prosecution for the enforcement of a city ordinance within territory annexed by virtue of proceedings authorized by such statute.

Appeal from Shawnee district court; Z. T. HAZEN, judge. Opinion filed November 5, 1904. Affirmed.

*Charles F. Spencer*, city attorney, for appellee.

*H. C. Root*, for appellants.

The opinion of the court was delivered by

BURCH, J.: Appellants were convicted in police court, and, on appeal, in the district court, of keeping and rearing swine within the corporate limits of the city of Topeka. Appellants admit the keeping and rearing of swine, but defend on the ground that the land devoted to that business was not a part of the city.

The city produced ordinances enacted and published in the year 1889, and judgments of the district court of Shawnee county rendered upon such ordinances, all under chapter 99 of the Laws of 1887, purporting to extend the limits of the city over the territory in question. Appellants make two classes of objections to this proof of annexation, one assailing the sufficiency and regularity of the proceedings of the city council and of the district court, and another attacking the validity of the statute under which those proceedings were taken.

If appellants have no right to question, in this collateral manner, the judgments, the ordinances, or the statute, the merits of their objections will not be investigated; if they have such right, they are entitled to a decision of the questions raised. What is the law?

So far as defects, informalities and irregularities, questions of good faith and good judgment, the finding of necessary facts, the determination of disputes of fact and like matters are concerned, it is established beyond cavil that annexation proceedings are closed against collateral attack.

"To maintain this suit, and to defeat the tax complained of, the plaintiff must establish, and the court must determine, that the organization of the district

is illegal. This cannot be done in the present action. The legality of the organization cannot be questioned in a collateral proceeding, nor at the suit of a private party. The organization cannot be attacked, nor any action taken affecting the existence of the corporation, except in a direct proceeding, prosecuted at the instance of the state by the proper public officer. (*Voss v. School District,* 18 Kan. 467; *School District v. The State,* 29 id. 57; *Stockle v. Silsbee,* 41 Mich. 615, 2 N. W. 900; *Clement v. Everest,* 29 id. 22 ) In the last case cited it is said that 'It would be dangerous and wrong to permit the existence of municipalities to depend upon the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies, and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons.'

"We do not intend to decide that in organizing this district the county superintendent's action was regular and legal. . . .

"What we do decide is, that there exists a valid law under which the organization can be made; that a corporation has been created thereunder, and is in existence; and that if there were any irregularities or illegal action in its organization, either by reason of the boundaries established or otherwise, that it must be determined by a *quo warranto* proceeding brought by the state." (*A. T. & S. F. Rld. Co. v. Wilson, Treas.*, 33 Kan. 223, 227, 6 Pac. 281:)

In the case of *McGrew v. Stewart,* 51 Kan. 185, 192, 32 Pac. 896, 898, it was said:

"Another point is presented, that plaintiff's land is not a part of the city, for the reason that it consisted of more than five acres and was not wholly surrounded by platted territory; but the annexation proceedings are not open to attack in this action. The proceedings to annex, upon their face, are regular. The action of the city council and the findings and decree of the court in the extension of the limits end the con-

troversy as to whether the territory is rightfully within the limits of the city."

The following among many cases to be found illustrate the principle : *Kuhn v. Port Townsend*, 12 Wash. 605, 41 Pac. 923, 29 L. R. A. 445, 50 Am. St. Rep. 911 ; *Frace v. Tacoma*, 16 id. 69, 47 Pac. 219 ; *The City of Albia v. O'Harra*, 64 Iowa, 297, 20 N. W. 444 ; *St. Paul Gaslight Co. v. Village of Sandstone*, 73 Minn. 225, 75 N. W. 1050 ; *Mullikin v. The City of Bloomington*, 72 Ind. 161 ; *Powell et al. v. City of Greensburg*, 150 id. 148, 154, 49 N. E. 955 ; *Schriber v. The Town of Langlade*, 66 Wis. 616 ; 29 N. W. 547, 554 ; *C. C. C. & St. L. Ry. Co. v. Dunn*, 63 Ill. App. 531 ; *Sage v. City of Plattsmouth*, 48 Neb. 558, 67 N. W. 455 ; *People v. Smith*, 131 Mich. 70, 90 N. W. 666 ; *Judson v. City of Plattsburg*, 3 Dillon (C. C.), 181, 184, Fed. Cas. No. 7570. Therefore, no objections of the first class will be considered.

The second problem presented is more difficult of solution. It involves the corporate integrity of the city of Topeka in the same manner as if the city's original organization were attacked, since every extension of corporate limits to include new territory is to that extent a reorganization. In the case of *State of Iowa v. City of Des Moines*, 96 Iowa, 521, 31 L. R. A. 186, 65 N. W. 818, 59 Am. St. Rep. 381, it was held that an act providing for annexation to a city is one for the incorporation of the city, within the meaning of the constitutional provision against local or special laws for that purpose ; and in the case of *State, ex rel., v. Mineral Land Co.*, 84 Mo. App. 32, the syllabus reads :

"The express power given to cities of the fourth class by statute to extend their limits over adjacent territory is one of *pro tanto* incorporation."

In Cooley's Constitutional Limitations, seventh edition, page 363, it is said:

"In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the state as such. Such a question should be raised by the state itself, by *quo warranto* or other direct proceeding."

In volume 1 of Dillon's Municipal Corporations, fourth edition, section 43*a*, the same rule is given:

"Where a municpal corporation is acting under color of law, and its existence is not questioned by the state, it *cannot be collaterally drawn in question* by private parties; and the rule is not different although the constitution may prescribe the manner of incorporation."

And in the case of *In re Short, Petitioner*, 47 Kan. 250, 27 Pac. 1005, the syllabus reads:

"Where a public organization, of a corporate or a *quasi*-corporate character, has an existence in fact, and is acting under color of law, and its existence is not questioned by the state, its existence cannot be collaterally drawn in question by private parties."

These general statements are inconclusive, however, because the expression "color of law" needs definition; and the question still remains, Will an invalid statute, or a statute invalid for particular reasons, afford "color of law"? If the legally equivalent phrase "mere semblance of legal right" (7 Cyc. 401) be substituted, there is stable ground for asserting that a statute apparently complying with the forms prescribed by the constitution for its enactment, and containing an intelligible declaration of the legislative will with respect to some matter fairly within the range of legislative cognizance, does make a sem-

Topeka v. Dwyer.

blance—a show, an appearance—of legal right.    The
argument, however, is frequently made, that without
a law there can be no organization or annexation, and
that an unconstitutional law is no law ; and from
these premises it is, of course, a short cut to the con-
clusion that annexation under an unconstitutional
statute is utterly void and may be collaterally at-
tacked at any time.

This reasoning utterly ignores the foundation of the
rule forbidding collateral question of the existence of
municipal corporations.    The rule rests wholly in
expediency, and operates in defiance of other legal
doctrines.    The consequences to society of allowing
private collateral attacks upon the existence of cities
would be intolerable, and hence courts are concerned
with the question, not if there exists a valid law, but
if considerations of the public welfare shall forbid any
inquiry as to whether or not there is a valid law ; not
if constitutional limitations have been transgressed,
but if the public tranquillity and the effective admin-
istration of government require that the matter of
validity, or invalidity, shall be ignored and a situa-
tion of affairs be arbitrarily recognized as if it were
legal, whether in fact it be so or not.

In the light of the reason for the rule against col-
lateral attack, appellants in this case have no standing
to raise the questions they propound.    The statute is
regular in form and purports to express a legislative
design.    The constitution commands that provision
be made by general law for the organization of cities.
(Art. 12, § 5.)    The act of the legislature is one step
in the execution of that mandate, the act of the city
council is another, and the act of the district court is
a third ; and it would seem that a fair and apparently
regular attempt on the part of the legislature to carry

out the constitutional requirement should be as free from impeachment as are fair and apparently regular attempts to do so on the part of the council and the district court. The consequences to society of a collateral attack are as disastrous in the one case as in the others.

Upon this question many courts have expressed themselves with vigor. In the case of *Coast Company v. Spring Lake*, 56 N. J. Eq. 615, 36 Atl. 21, the syllabus reads :

"The fact that a general statute for the formation of boroughs has been officially declared to be unconstitutional in an action brought by the attorney-general to test the *de jure* existence of one corporation formed under the act cannot, in a collateral suit, affect the existence or powers of another borough organized under the same act."

In the opinion it was said :

"The force of the judgment in the preceding case was spent when it annulled the corporate existence of the borough of Cape May Point. It is of course obvious that the decision in that case will be controlling as a precedent whenever the question of the constitutionality of the same act arises in a shape to be passed upon. The question can be raised by an attack upon any step taken to organize a borough under the provisions of the act by means of a *certiorari* allowed before the corporation has become an existing entity.

"After the corporation has been organized its existence can be called in question only by an information in the nature of a writ of *quo warranto*, allowed by permission of the attorney-general. No unconstitutional feature of the scheme provided by the legislature for the institution of such a municipal corporation can be made a ground for refusing to recognize the corporate function of a municipality so created when the corporate existence is involved in a collateral proceeding."

Topeka v. Dwyer.

In the case of *Attorney-general v. Town of Dover*, 62
N. J. L. 138, 41 Atl. 98, 99, the supreme court of the
same state said :

"There can be no stability or assurance of safety in
the conduct of government under legislative enactment
if this rule is not recognized.   Whether a law is valid
and constitutional cannot be known until it is sub-
mitted to judicial decision, and it would lead to the
wildest confusion and uncertainty in public affairs to
hold that municipal government, under the provisions
of legislative enactment, is wholly without authority
or sanction where such enactment is ultimately pro-
nounced to be infirm.''

In the case of *Railroad Co. v. Town*, 49 La. Ann. 931,
22 South. 192, the syllabus reads :

"The constitutionality of the act No. 49 of 1882,
providing the method of creating municipal corpora-
tions, and the organization of the municipal corpora-
tion under the act, cannot be attacked collaterally by
the defendant, resisting a tax claimed by the corpora-
tion.''

In the case of *State of Iowa v. City of Des Moines*, 96
Iowa, 521, 535, 31 L. R. A. 186, 65 N. W. 818, 59
Am. St. Rep. 381, the supreme court of Iowa, in a
*quo warranto* proceeding, held an act of incorporation
to be unconstitutional.   In view of the fact that an
annexation of territory under the invalid law had
been acquiesced in for a period of four years, the
right of the state to interfere was denied.   In discuss-
ing the force of the unconstitutional law some authori-
ties involving the doctrine of collateral attack were
considered, and the court said :

"It will be seen that importance is given to the
fact that the defective organization takes place under
color of law.   Nothing less can be said of the annexa-
tion in this case than that it was made under color
of law.   'Color of law' does not mean actual law.

'Color' as a modifier, in legal parlance, means 'appearance as distinguished from reality.' Color of law means 'mere semblance of legal right.'"

The organization of an irrigation district was challenged as unconstitutional in a collateral proceeding. The United States circuit court for the southern district of California said:

"The rule, sustained by the overwhelming current of authorities, and based on considerations of public policy, is that, where a reputed corporation is acting under forms of law, unchallenged by the state, the validity of its organization cannot be drawn in question by private parties. Corporate franchises are grants of sovereignty only, and, if the state acquiesces in their usurpation, individuals will not be heard to complain. Neither the nature nor extent of an illegality in its organization can affect the existence of a reputed corporation, if the requisites just stated are present; that is, if such corporation be acting under color of law, and the state makes no complaint." (*Miller v. Perris Irrigation Dist.*, 85 Fed. 693, 699.)

"If a corporation be acting under color of law, and be recognized as such by the state, its corporate character cannot be questioned collaterally. Such a question should be raised by *quo warranto*. And the rule prevails even though its incorporation may be affected by constitutional provisions." (*City of St. Louis v. Shields et al.*, 62 Mo. 247.)

"The constitutionality of a law establishing a new county cannot be inquired into upon a motion to quash an indictment found in a court of such county." (*State v. Rich*, 20 Mo. 393.)

"When a municipal body has assumed, under color of authority, and has exercised for any considerable period of time, with the consent of the state, the powers of a public corporation of the kind recognized by the organic law, neither the corporation nor any private party can, in private litigation, question the legality of its existence.

Topeka v. Dwyer.

"An unconstitutional and void law may yet be color of authority to support, as against anybody but the state, a public or private corporation *de facto*, where such corporation is of a kind which is recognized by, and its existence is consistent with, the paramount law, and the general system of law, in the state." (*Ashley v. Board of Supervisors*, 16 U. S. App. 656, 60 Fed. 55, 8 C. C. A. 455.)

Other authorities are to the same effect. In this state the constitution requires that no county shall be organized with less than a certain area in square miles. The legislature created the county of Garfield, and defined its boundaries. In a collateral proceeding it was agreed by the parties that the county contained less than the constitutional area, but this court declined to consider the matter. (*In re Short, Petitioner*, 47 Kan. 250, 27 Pac. 1005.)

In the case of *Riley v. Garfield Township*, 54 Kan. 463, 471, 38 Pac. 560, the opinion reads :

"As was said in *School District v. The State*, 29 Kan. 57 : 'There was nothing, in fact, to put any one upon inquiry as to the defective character of this organization, because, although in furtherance of justice, the courts uphold the maxim that "ignorance of law excuses no one," it is nevertheless true that the unconstitutionality of legislative acts, until they are attacked directly, is often so latent and obscure as not to be discoverable, even by courts of justice, in any casual examination of such acts.'

"In this instance, the element of unconstitutionality was entirely outside of the act itself, hidden and obscure, and could only be discovered by ascertaining the actual area of the county. Although the original organization of Garfield county was without authority from the constitution, yet, as the statute creating the county was not void upon its face, and as the county had a *de facto* organization, and as the records of such organization appear regular and valid, and as the state officials proclaimed the organization, and as its

validity was subsequently recognized by them and the legislature, we must hold that all of the bonds issued by Garfield county under the provisions of the statute and in regular form, while its organization as a county was in existence, are valid obligations in the hands of *bona fide* purchasers.''

In the case of *Ritchie v. Mulvane*, 39 Kan. 241, 17 Pac. 830, territory had been annexed to a city under a statute apparently valid, but in fact unconstitutional. Pursuant to the changed status of the annexed territory, tax proceedings were conducted which resulted in the issuance of tax deeds. In an ejectment action the district court held the deeds to be void, but allowed the tax-deed holder to recover the taxes paid. In this court the only question presented was if the taxes so assessed and levied might lawfully be recovered by the tax-deed holder, and the judgment of the district court concerning that matter was affirmed.

Doubtless an attempt to exercise corporate functions in opposition to the prohibition of a statute would be held void whenever questioned; and it is conceivable that a legislative departure from constitutional restraints may be so flagrant as not to afford even color of law. If something exhibited as a law were barren of an enacting clause, could it be called an act of the legislature? In the case of *Railroad Co. v. Kearny County*, 58 Kan. 19, 48 Pac. 583, a collateral attack upon a municipal organization was permitted because of the appearance of non-existence on the face of the so-called law of its creation. The constitution requires that the subject of a bill be clearly expressed in its title. The title of the act impugned expressed one subject, and the body of it another. The situation was the same as if no attempt at legislation had been made. However, the same statute was held sufficient to give color of law to the organization of

the same municipal body in the case of *Speer v. Board of County Comm'rs*, 88 Fed. 749, 32 C. C. A. 101.

After the decision in *Railroad Co. v. Kearny County* (which the writer believes to be wrong), this court, in the case of *Riley v. Garfield Township*, 58 Kan. 299, 49 Pac. 85, quoted approvingly from the case of *State v. Carroll*, 38 Conn. 449, 9 Am. Rep. 409, in which it was said an unconstitutional law is sufficient to give color of title to an office, and held that, until the dissolution of Garfield county, in an action of *quo warranto* brought by the attorney-general for that purpose, the acts of all its officers were valid and binding, notwithstanding the unconstitutionality of its organization.

In the present state of the law it is impossible to announce a general rule for ascertaining in all cases what acts of the legislature, invalid for constitutional reasons, are sufficient to afford color of law ; and, until the rule against collateral attack upon municipal existence can be made absolute, the most that can be said is that there must be something apparently regular in the form of a statute, and it must fairly indicate the legislative will.

In this case the act of 1887 afforded color of law for the annexation of the territory in dispute. Its constitutionality will not be investigated, and the judgment of the district court is affirmed.

All the Justices concurring.