Horner v. City of Atchison.

No. 19,084.

HARRY HORNER, *Appellant*, v. THE CITY OF ATCHISON, *Appellee*.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Collapse of Bridge—Bridge Outside City Limits—Corporate Organization of City Can Not be Attacked Collaterally.* The plaintiff sued the city for damages for personal injuries resulting from the collapse of a bridge. The defense was that the bridge was not in the city. The proof was that upon taking in an addition to the city, not adjacent to the bridge, the bridge had been left outside the city limits by an ordinance changing and defining the boundaries of the city. *Held*, the plaintiff could not make a collateral attack upon the corporate organization of the city by questioning the validity of the ordinance.

2. SAME—*Contributing to Maintenance of Bridge—City Not Liable on Grounds of Estoppel and Assumed Control.* Although the bridge was carried on the county records as bridge number 81 on road number 59, it lay but a few feet, or at most a few yards, beyond the city limits. It was of great convenience to the inhabitants of the city and the city officials on occasions inspected it and contributed to the expense of rebuilding and repairing it. *Held*, the city was not responsible for the condition of the bridge, on the grounds of estoppel and assumed control.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed December 12, 1914. Affirmed.

*J. L. Berry, C. S. Hull,* both of Atchison, and *J. G. Waters,* of Topeka, for the appellant.

*Walter E. Brown,* of Atchison, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the city for damages for personal injuries resulting from the collapse of a bridge. The city defended on the ground that the bridge was not within the city limits. The defendant prevailed and the plaintiff appeals.

The bridge spanned White Clay creek and was carried on the county records as bridge number 81 on road number 59. According to the terms of an ordinance passed in 1890, defining the boundaries of the city, a street designated as Thirteenth street formed the western boundary of the city at the locality in question. Thirteenth street extends north and south. A government half-section line runs north and south through its central portion, and the bridge stood upon that part of the street which lies west of the half-section line. In August, 1905, an ordinance was passed taking into the city an addition not adjacent to the bridge and "changing and defining the corporate limits and boundaries of said city." This ordinance established the western boundary of the city at the half-section line and consequently left the bridge lying outside the city limits. The incorporation of the addition necessarily effected a change in the city limits. Upon such change being made it became the duty of the mayor and council to declare by ordinance the entire boundary of the city. (Gen. Stat. 1909, § 871.) The corporate limits thus established in 1905 have not since been changed by ordinance.

In order to show that the limits of the city did not extend far enough westward to include the bridge, the defendant introduced in evidence the ordinance of 1905. Presumptively the ordinance was valid, the existence of such facts as were essential to its validity was to be presumed, and the ordinance was sufficient to make a *prima facie* case in favor of the defendant, even if its corporate organization had been attacked directly by the state in an action brought for that purpose. (*The State, ex rel., v. City of Atchison*, 92 Kan. 431, 140 Pac. 873.) The plaintiff asserts, however, that the ordinance was void. The defendant replies that it can not be required to litigate that subject with the plaintiff, either upon an issue of law or an issue of fact raised collaterally to a personal-injury suit.

The defendant's position is supported by the following decisions of this court: *Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417; *Railway Co. v. Lyon County,* 72 Kan. 16, 84 Pac. 1031; *Chaves v. Atchison,* 77 Kan. 176, 93 Pac. 624; *Gardner v. Benn,* 81 Kan. 442, 105 Pac. 435; *Railroad Co. v. Leavenworth County,* 89 Kan. 72, 77, 130 Pac. 855; and *Price v. City of McPherson,* 92 Kan. 82, 85, 139 Pac. 1162.

The plaintiff says the cases cited were all cases in which territory had been annexed and corporate boundaries enlarged, while in this case the city undertook to exclude territory from its corporate limits. The distinction does not render the principle involved inapplicable. It was pointed out in the Dwyer case, and in others following it, that the enlargement of corporate limits to include new territory is to that extent a reorganization, and an attack upon reorganization involves corporate integrity the same as if original organization were questioned. A reduction of corporate limits by the exclusion of territory is to that extent a reorganization, and an attack upon reorganization effected in that way involves corporate integrity the same as if original organization were assailed.

The plaintiff says the ordinance of 1905 was enacted without color of law and consequently that it should be disregarded by any court which encounters it. This statement does not sound the controversy. The question here is whether the bridge was outside the corporate boundaries of the city. The proof shows that some five years before the collapse of the bridge, which occurred in September, 1910, the city limits had been contracted under color of an ordinance duly passed and published and acquiesced in by the public and by the law officers of the state. The ordinance may be valid or invalid, but it furnishes color of law for the present corporate organization (*Railway Co. v. Lyon County,* supra), and for reasons of public policy the plaintiff can not disorganize the city by a collateral attack made in this suit.

The plaintiff says the ordinance held to afford color of law in the Lyon county case had back of it a statute permitting the city to annex territory, while the ordinance involved in this case had back of it no statute permitting the city to exclude territory. The ordinance in this case had back of it a statute providing a method by which territory might be excluded from the city, and requiring the city whose boundaries had been changed by this method to record the change by ordinance. (Laws 1905, ch. 519, § 7, Gen. Stat. 1909, § 9719.) The plaintiff says that this law is unconstitutional, and that if it were constitutional the steps preliminary to an ordinance recording a change in boundary resulting from the exclusion of territory had not been taken. At the time the ordinance of 1905 was passed the validity of the statute of 1905 had not been questioned. Consequently it furnished color of law for the passage of the ordinance. The existence of the preliminary facts will be assumed, if necessary, and the plaintiff is not allowed to contest either the assumption or the validity of the statute, for reasons stated at length in the Dwyer case, *supra:*

"The rule rests wholly in expediency, and operates in defiance of other legal doctrines. The consequences to society of allowing private collateral attacks upon the existence of cities would be intolerable, and hence courts are concerned with the question, not if there exists a valid law, but if considerations of the public welfare shall forbid any inquiry as to whether or not there is a valid law; not if constitutional limitations have been transgressed, but if the public tranquillity and the effective administration of government require that the matter of validity, or invalidity, shall be ignored and a situation of affairs be arbitrarily recognized as if it were legal, whether in fact it be so or not." (70 Kan. 249.)

The result is that for all purposes of this case the bridge is not within the city.

The bridge was of great convenience to the public, including the inhabitants of the city, and the city officials, on occasions, inspected it and contributed to

the expense of rebuilding and repairing it. The plaintiff argues from these facts that the city was responsible for the condition of the bridge on the grounds of estoppel and of assumed control.

The acts of the city in inspecting the bridge and in contributing to its maintenance in a safe condition merely indicated a desire to promote the public convenience. There is no proof that anybody was induced to use the bridge under the belief that if he were injured the city would make good the damages. The ordinance of 1905 placed the bridge outside the city and in the body of the county. The county records disclosed that the bridge was one for whose defects the county was responsible. The attitude of the city toward the bridge having been declared in the most formal and conspicuous manner possible, by ordinance duly enacted and published, no ground existed for assuming that the legal consequences of the ordinance were to be nullified by occasional and incidental acts of lesser solemnity. Beyond this, however, the city officials could not "assume control" of a bridge beyond the corporate limits and thus make the corporation liable in damages for injuries resulting from its instability, and if the mayor and council should attempt to do so, even by ordinance, the city would not be estopped to deny liability on the ground of lack of corporate power to enact the ordinance.

"A pedestrian can not recover damages for injuries due to the defective and negligent construction of a sidewalk outside the legal limits of the city. The fact that the city supposed at the time the walk was constructed that the city limits had been legally extended to include the street, while in fact that extension had been declared to be illegal and void prior to the accident, does not give the pedestrian any right to charge her injuries to the city.

"Where the sidewalk was not at the time the pedestrian was injured within the city limits, the city was not estopped from denying that it was, because of the fact that it had by ordinance ordered it to be con-

36—93 KAN.

structed. The ordinance was *ultra vires,* and if the city had no power to enact it no act of its can have the effect to estop it to allege its want of power to enact such ordinance." (*Stealey v. Kansas City,* 179 Mo. 400, syl. ¶¶ 1, 4, 78 S. W. 599.)

In this state a city has no corporate power except such as the legislature confers upon it. Its corporate duties are measured by its corporate powers. The duty to maintain bridges within the city limits is the correlate of the power to maintain the streets of the city in a condition safe for public travel and to levy taxes and impose local assessments for that purpose. (*Comm'rs of Shawnee Co. v. City of Topeka,* 39 Kan. 197, 18 Pac. 161.) This power ends at the city limits. With the termination of the power the duty ceases, and there can be no liability without a breach of duty. For roads and bridges in territory lying outside the limits of cities the legislature has made other provision. A city can not by its own ordinance add to its power over public ways any more than a man can by taking thought add a cubit to his stature. Where the act undertaken is beyond the statutory power of a city nothing the city can do can place the act within its power. All persons are put upon absolute knowledge of the public powers of municipal corporations, and the corporate body, whose treasury must supply the funds to pay judgments for damages in personal-injury cases, is no more estopped to deny the validity of unauthorized or illegal acts of its officers in assuming responsibility for the safety of a bridge lying a few feet or a few yards beyond their jurisdiction than it would be estopped if the bridge lay in some remote part of the county, or in some other county.

Cases may be found in which it was held that municipal corporations were estopped to deny that they had assumed jurisdiction over bridges, but the bridges in controversy lay within the city limits, and the question was not one of power but whether or not lawful power had been extended as a matter of fact. Cases are

abundant in which municipal corporations have been estopped by conduct exhibited in their private, proprietary capacity, but in their control over streets cities act as agents of the state in a matter of public concern, a matter of concern not only to the inhabitants of the city but to all persons who may have occasion to use the streets. Cases may be found in which it was decided that cities had responsible authority over territory beyond their borders, but in such instances their jurisdiction had been expressly conferred by the legislature. The result is that the declaration of the court in the case of *Topeka v. Cook,* 72 Kan. 595, 84 Pac. 376, is as true for the plaintiff in this action as it was for the plaintiff Cook.

"An essential fact to a recovery by the plaintiff was that the place where the accident occurred was within the limits of the city, and one which the city was bound to make safe for public travel." (p. 596.)

It may be observed that the word "and" in this quotation does not mean "or." The place must not only be within the city limits but it must also be one which duty requires the city to maintain properly. A city is seldom required to keep every part of all its public ways in good condition for travel, and very often private bridges are brought within city limits for which the city is not responsible until it assumes control over them in some way.

A superficial critic might find fault with a system of law which prohibits the plaintiff from disputing an unauthorized act of the mayor and council while it allows the city itself to repudiate unauthorized acts of the same governing body. Both rules, however, are well founded. Experience has demonstrated that it is unwise and unjust to charge corporations with delinquencies of their officers and agents in matters outside the scope of their authority, and this rule is the same for public corporations, private corporations, and private persons. The plaintiff is forbidden to question

the particular act of the city which he claims was invalid because of paramount considerations of the public welfare. The disaster to the public would be too great to permit a private person to disorganize a city, which must have defined limits, by destroying its established boundaries, although such boundaries were not established in conformity with law. Besides this, the failure of the plaintiff's action is not due to any defect in the law. The county should have been made a party defendant, an oversight in the preparation of the petition not chargeable to the attorneys representing him in this court.

The judgment of the district court is affirmed.