No. 34,759

EULA M. FLETCHER, *Appellant,* v. V. A. WEIGEL, *Appellee.*

(102 P. 2d 1055)

Opinion filed June 8, 1940.

*W. T. Roche,* of Clay Center, for the appellant.
*W. M. Beall,* of Clay Center, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: Frank L. Fletcher died intestate. The property occupied by him as a residence at the time of his death was in Fletcher's addition to the city of Morganville. An inventory and appraisement were filed which set off to the widow twenty acres upon which the residence was located, as her homestead. Exceptions to the report

of the appraisers were filed by appellee. Appellant filed a demurrer to the exceptions, which was overruled. Upon a hearing had the exceptions were sustained, and from that order an appeal was taken to the district court. In the district court the demurrer to the exceptions was overruled and the cause was submitted upon an agreed statement of facts. The court rendered judgment sustaining the exceptions, and it was adjudged that a homestead not exceeding one acre be set off to the widow. This appeal followed. The principal question presented is whether Fletcher's addition is within the corporate limits of the city.

On July 20, 1907, a plat of Fletcher's addition to the city of Morganville, duly acknowledged by Frank L. Fletcher and Eula M. Fletcher, was filed and recorded in the office of the register of deeds in Clay county. On January 23, 1922, the governing body of the city of Morganville at a special meeting held for that purpose, approved a petition directed to the board of county commissioners of Clay county asking that the tract of ground embraced in the plat be incorporated in the city and to be known as Fletcher's addition. Proper notice of the hearing was given. On February 20, 1922, the board of county commissioners made an order declaring the territory described in the petition referred to as Fletcher's addition "shall be and constitute a part of the territory within the corporate limits" of the city and declaring the city limits are extended to include such territory.

Since 1922 the territory embraced in Fletcher's addition has been carried on the tax rolls of the city; in 1925 the fire limits within the city were by ordinance extended to include such addition; the Fletchers conveyed property in the addition, and residents of the addition were elected to and held offices in the city.

In 1933 a special election in the city of Morganville submitting to the qualified voters the proposition of issuing bonds for the purpose of constructing a waterworks system in the city was held. The electors in Fletcher's addition voted at the election, and the property in the addition was included by the city authorities in certifying as to the assessed value of the city in connection with the bond issue.

The city has for many years furnished police and fire protection and also has furnished electric light and water service to the inhabitants of such addition. The city has levied and collected taxes upon the property in the addition, and has otherwise, in all respects

and for all purposes during a period of seventeen years last past, extended and exercised its jurisdiction over the property and the inhabitants in such addition.

Frank L. Fletcher died intestate April 24, 1939. He left surviving, his widow, Eula M. Fletcher, and two adult sons. At the time of his death and some time prior thereto the two sons were living separate and apart from their parents.

In 1922, when the proceedings to annex Fletcher's addition were taken, the following sections were a part of the General Statutes of Kansas for 1915:

"§ 808. That whenever the city council of any city of the second or third class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of said city, present a petition to the board of county commissioners of the county in which such city is situated, setting forth by metes and bounds the territory sought to be added, and asking said board of county commissioners to make a finding as to the advisability of adding said territory to said city. Upon such petition being presented to said board of county commissioners, with proof that notice of the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published and of general circulation in said city, they shall proceed to hear testimony as to the advisability of making such addition; and upon such hearing, if they shall be satisfied that the adding of such territory to the city will be to its interest, and will cause no manifest injury to the persons owning real estate in the territory sought to be added, they shall so find; and thereupon the city council of said city may add such territory to said city by an ordinance providing for the same: *Providing,* [Provided,] That no such proceeding shall be necessary where the territory sought to be added is subdivided into lots and blocks, but in such cases the city council of such city shall have power to add such adjacent territory to said city by ordinance: *And further provided,* No unplatted territory of over five acres shall be taken into said city against the protest of the owner thereof, unless the same is circumscribed by platted territory that is taken into said city. [L. 1885, ch. 97, § 1, as amended by L. 1886, ch. 69, § 1, as amended by L. 1905, ch. 118, § 1; March 21.]

"§ 809. That whenever the city council of any city of the third class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of the city, present a petition to the board of commissioners of the county in which said city is situated setting forth by metes and bounds the territory sought to be so added, and praying that such territory may be added thereto. Upon such petition being presented to said board, with proof that notice as to the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published in said city, they shall proceed to hear testimony as to the advisability of making such addition; and upon such hearing, if they shall be satisfied that the adding of such territory to the city will be to its interests and will cause no manifest injury to the persons owning real estate in the territory sought to be

added, they shall make an order declaring said territory a part of the corporate limits thereof and subject to the laws and ordinances pertaining thereto: *Provided,* That no such proceeding shall be necessary when the territory sought to be added is subdivided into lots or parcels of five acres or less, but in such cases the city council of said city shall have power to add such territory to said city by ordinance. [L. 1872, ch. 102, § 3, as amended by L. 1886, ch. 66, § 4; Feb. 19.]"

The contention of appellant is thus stated:

"The attempt to annex this property to the city occurred on February 20, 1922, as shown by the agreed statement of facts. The lower court held that the law in effect at that time governing the procedure to annex territory to a city of the third class was sec. 1172 of G. S. 1901. In this we think the court erred, and we believe the cause of this error is because of the confusion of secs. 808 and 809 of G. S. 1915. The reason for carrying sec. 809 is clearly stated under sec. 809, showing it was obsolete.

"Our legislature, in 1905, gave us a statute covering the entire subject matter of annexing territory to cities of both the second and third class.

"We refer to chapter 118, Laws of 1905. The title of this law reads: 'An act to amend section 1052 of the G. S. 1901, relating to cities of the second and third class.' It is true this law did not expressly repeal section 1172 of G. S. 1901, but it gave us an independent measure covering the entire subject matter, and became a substitute therefor.

"Under this law of 1905, the board of county commissioners was clothed with the power to determine the advisability of adding the territory. There the authority and jurisdiction of the county board ended. The law then left it optional with the city to add the territory, by using these words: 'And thereupon the city council of said city may add such territory to said city by ordinance providing for the same.'

"It is our contention that the statute above quoted was the law in 1922, and that it was not followed in any particular, but that the obsolete and repealed (by implication and later law) statute of 1886 was taken as the law in force in the abortive attempt to annex the territory in question."

Section 1172, G. S. 1901, appeared as section 809 in the General Statutes of 1915. Appellant argues that chapter 118, Laws 1905, repealed section 1172—at least by implication.

We are not called upon to determine whether the section in question was repealed by implication. From the agreed statement of facts it is clear that a genuine attempt was made by the governing body of the city to annex Fletcher's addition. The General Statutes of 1915 in force at the time carried sections 808 and 809. Substantial compliance with both sections was shown, except that the records fail to show the passage of an ordinance as required by section 808. If it be conceded that the records fail to show strict compliance with each procedural requirement of section 808 it would

not avail appellant in this lawsuit. These statutes furnished the color of law and semblance of legal right ample and sufficient to sustain the annexation of the addition as against a collateral attack. Where a municipal corporation is acting under color of law, and its existence is not questioned by the state, it cannot be collaterally drawn in question by private parties. (*Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417; *In re Short,* 47 Kan. 250, 27 Pac. 1005; *Horner v. City of Atchison,* 93 Kan. 557, 144 Pac. 1010.)

The question received careful consideration in *Topeka v. Dwyer,* supra. It was there stated:

"These general statements are inconclusive, however, because the expression 'color of law' needs definition; and the question still remains, Will an invalid statute, or a statute invalid for particular reasons, afford 'color of law'? If the legally equivalent phrase 'mere semblance of legal right' (7 Cyc. 401) be substituted, there is stable ground for asserting that a statute apparently complying with the forms prescribed by the constitution for its enactment, and containing an intelligible declaration of the legislative will with respect to some matter fairly within the range of legislative cognizance, does make a semblance—a show, an appearance—of legal right. The argument, however, is frequently made, that without a law there can be no organization or annexation, and that an unconstitutional law is no law; and from these premises it is, of course, a short cut to the conclusion that annexation under an unconstitutional statute is utterly void and may be collaterally attacked at any time.

"This reasoning utterly ignores the foundation of the rule forbidding collateral question of the existence of municipal corporations. The rule rests wholly in expediency, and operates in defiance of other legal doctrines. The consequences to society of allowing private collateral attacks upon the existence of cities would be intolerable, and hence courts are concerned with the question, not if there exists a valid law, but if considerations of the public welfare shall forbid any inquiry as to whether or not there is a valid law; not if constitutional limitations have been transgressed, but if the public tranquillity and the effective administration of government require that the matter of validity, or invalidity, shall be ignored and a situation of affairs be arbitrarily recognized as if it were legal, whether in fact it be so or not.

"In the light of the reason for the rule against collateral attack, appellants in this case have no standing to raise the questions they propound. . . ." (p. 248.)

The validity of the annexation of Fletcher's addition cannot be attacked in this lawsuit.

It is next urged that the receiver of the bank of Morganville had no claim on file and therefore had no standing in court to object to the inventory which attempted to set off to the widow twenty acres as her homestead. As the record shows, the attorney for the ad-

ministrator stated in open court that the receiver had a valid claim, and as the point was not raised either in the probate or the district court we think the contention is without merit.

Adroit counsel for appellant next contends that if any collateral attack has been made upon the corporate existence and territorial integrity of the city it was made by appellee in attempting to enlarge the boundaries of the city by claiming Fletcher's addition is a part of the city. The answer is that under the agreed statement of facts the addition is now and has been for more than seventeen years recognized as territory duly incorporated in the city. Before appellant can prevail in this action it is necessary to exclude the addition from the boundaries of the city. The point is not well taken.

Appellant further asserts that she cannot be deprived of her homestead rights in the property for the reason she did not consent to the incorporation of the addition into the city. As we have seen, the plat of the addition, duly acknowledged by Frank M. Fletcher and Eula M. Fletcher, was filed and recorded, and thereafter the addition was duly incorporated into the city. Assuming the land in the addition was the homestead of Fletcher, the incorporation of the platted territory into the city was not an alienation of the homestead. Fletcher continued to own the land after the addition was incorporated into the city. It is true that the extent of the homestead after incorporation is one acre, but that is the result of the constitutional and statutory provisions.

Finding no error in the record, the judgment must be affirmed. It is so ordered.