42,878

Re: Petition of Kansas City, Kansas, to Annex Territory (Fairfax Airport).

FAIRFAX DRAINAGE DISTRICT, *Appellant*, v. CITY OF KANSAS CITY, KANSAS, *Appellee*.

(374 P. 2d 35)

Opinion filed August 28, 1962.

*Joseph H. McDowell*, of Kansas City, argued the cause, and *Guy E. Stanley*, of Kansas City, was with him on the briefs for the appellant, Fairfax Drainage District.

*J. W. Mahoney*, of Kansas City, argued the cause, and *C. W. Brenneisen, Jr.*, of Kansas City, was with him on the briefs for the appellee, City of Kansas City, Kansas.

*Leonard O. Thomas* and *James J. Lysaught*, both of Kansas City, Kansas, *amici curiae*.

The opinion of the court was delivered by

PARKER, C. J.: This controversy stems from a proceeding by the City of Kansas City, Kansas, to enlarge the city limits.

On April 11, 1960, the City (appellee) filed a petition with the Board of County Commissioners of Wyandotte County (hereinafter referred to as the Board) for the enlargement of the boundaries of the City to include the Fairfax Municipal Airport. The land was definitely described by metes and bounds. The petition concluded:

"Said City of Kansas City, Kansas, by and through its proper officials, states to the Honorable Board of County Commissioners that the only owner of property in the above described lands is the City of Kansas City, Kansas, and said City further states to the Board that the adding of said territory will be to its

interest and will cause no manifest injury to the owner of real estate in the territory sought to be added, the City.

"Petitioners further state that they are filing this petition with the Board of County Commissioners under the terms of G. S. 1949, 12-501 and 12-502, and pray the Board of County Commissioners for the earliest possible hearing in accordance with the terms of said Statutes."

The area described in the petition included all of the airport and dikes rights-of-way on two sides along the Missouri River. The Fairfax Drainage District (appellant) owned the dikes which comprised approximately fifty acres and also held easements on twelve to fifteen acres of land covered by the airport.

On the first day of the hearing before the Board the Drainage District objected to the dikes being included in the City's proposed annexation. The City then requested the Board to sustain the protest and remove the land covered by the dikes from the proposed area. The Drainage District objected to this procedure.

After an extended hearing the Board passed a resolution enlarging the boundaries of the City which, so far as here pertinent, reads:

"Whereas, after hearing all of the evidence, considering the briefs and arguments, and after due deliberation and consideration the County Commissioners did find that the adding of such territory as hereinafter described to the city will be to its interest and will cause no manifest injury to the persons owning real estate in the territory sought to be added.

"Now, Therefore, Be It Resolved that the Commissioners of Wyandotte County, Kansas herewith determine that it will be to the best interest of the city of Kansas, City, Kansas to extend its boundaries and to add the real property hereinafter described and that such extension and addition will cause no manifest injury to the persons owning real estate in the territory as described.

"Be It Further Resolved, that the boundaries of the city of Kansas City, Kansas be and they are hereby enlarged to include real property described as follows, to-wit: . . ."

The description, by lengthy metes and bounds, was omitted from the abstract but it is conceded that it did change the legal description from that set out in the petition so as to eliminate the fifty acres covered by the dikes.

The resolution of the Board approving the enlargement of the boundaries of the City was dated October 6, 1960. On the same day the Drainage District filed its appeal in the district court of Wyandotte County. We note no further action in the case until April 19, 1961, when the Drainage District filed a motion for declaratory judgment. This motion challenged the interpretation and validity of previous ordinances annexing territory to the City.

The case was tried before the district court on the evidence and exhibits submitted to the Board and other stipulated facts. The court made findings of fact which, corrected to reflect the court's modifying order and a *nunc pro tunc* order, are as follows:

"1. The City of Kansas City, Kansas, has adopted three ordinances which are pertinent to this appeal, as follows:

"*a.* Ordinance No. 41358, adopted December 10, 1957, which described a portion of tracts of land owned by Phillips Petroleum Company and the Union Pacific Railroad lying between Fairfax Airport and the City with the north boundary line of such tract extending east and west on a line 33 feet north of the east-west centerline of Section 10, Township 34, Range 25, to the center of the Missouri River.

"*b.* Ordinance No. 41358 was repealed by Ordinance No. 41525. No proceedings were ever instituted under G. S. 1949, 12-504, to de-annex or exclude said tract from the city.

"*c.* Ordinance No. 41525, adopted March 25, 1958, described the same tract of land as described in Ordinance No. 41358 except that the north boundary is the east-west center line of Section 10, Township 34, Range 25, and extends only to the harbor line of the Missouri River instead of to the center of the river. This ordinance was the one involved in *State ex rel. v. Kansas City*, 186 Kan. 190.

"*d.* Ordinance No. 42589, adopted September 15, 1960, describes a tract of land which includes Fairfax Airport. Its south boundary line extends along the east-west center line of Section 10, Township 34, Range 25. The tract excludes 50 acres of dikes owned by the Drainage District and includes approximately 12-15 acres of easements for sewers and drainage under the airport proper which are owned by the Drainage District. It is this ordinance which is involved in the findings and order made by the Board of County Commissioners which have been appealed to this court.

"2. The petition of the City to the Board of County Commissioners for an enlargement of boundaries describes the same tract described in Ordinance No. 42589.

"3. All of the lands described in the above ordinance are unplatted.

"4. There are ten outstanding lease agreements from the City and Board of Public Utilities to various firms and corporations who occupy facilities at Fairfax Airport. Most of the leases are for terms of from one to three years. One lease extends to 1968 and another to 1991. In two of said leases, the lessees agreed not to protest any annexation efforts by the City. There is no evidence that any of these lease agreements are recorded or otherwise shown in any county records.

"5. The published notice given by the City pursuant to G. S. 1949, 12-502, did not include the names of any of the lessees referred to in Finding of Fact No. 4, nor the Missouri Pacific Railroad Company. None of said lessees nor the Missouri Pacific Railroad Company have appealed from the findings and order of the Board of County Commissioners involved in this appeal.

"6. The Drainage District appeared at the hearing before the Board of County Commissioners and protested annexation by the City, and the Board

of County Commissioners, at the request of the City, excluded from the area to be annexed the 50 acres of dikes owned by the Drainage District. The Board did not exclude the approximately 12 to 15 acres of easements under the airport owned by the Drainage Board.

"7. The Missouri Pacific Railroad Company by deed dated July 18, 1944, conveyed an 8.12 acre tract of land to the City described as follows:

" 'A tract of land situated in the northeast quarter of Section 34, Township 10 South, Range 25 East, Wyandotte County, Kansas, more particularly described as follows, viz.:

" 'Starting at the southeast corner of the northeast quarter of said Section 34, measure westwardly 1138.05 feet along the southerly line of said quarter section, being also the centerline of Rickel Road (66 feet wide) as located therealong; thence turning an angle of 109 degrees, 3 minutes, 40 seconds to the right, northeastwardly 34.91 feet to the northerly line of Rickel Road for the point of beginning, thence continuing northeastwardly along last described course 879.47 feet; thence westwardly parallel to centerline of Rickel Road 425.67 feet; thence turning an angle of 70 degrees, 58 minutes to the left, southwestwardly 879.31 feet to the northerly line of Rickell Road, thence eastwardly 425.16 feet to the point of beginning, containing 8.12 acres, more or less.' Rickel Road is 60 feet wide instead of 66 feet wide as stated in the above description, and the Drainage District contends that the south three feet of the above tract ( 3' x 425.67' ) is still owned by the grantor, Missouri Pacific Railroad Company.

"8. The Board of County Commissioners by resolution No. 467, dated October 6, 1960, made a finding that the adding of Fairfax Airport, as described in the resolution, excluding the dikes of 50 acres, to the City, would be to its interest and would cause no manifest injury to the persons owning real estate in the territory to be added, and ordered the boundaries of the City enlarged to include such territory."

The Court made the following conclusions of law:

"1. In this appeal, this Court has only the jurisdiction granted by G. S. 1949, 12-502a.

"2. The validity of the ordinances described in Findings of Fact numbered 1 may not be questioned in these proceedings.

"3. The City boundaries are adjacent to the area sought to be annexed by Ordinance No. 42859 [sic] [42589].

"4. The Drainage District is not aggrieved by the failure of the published notice required by G. S. 1949, 12-502, to name the leaseholders named in Finding of Fact No. 4 or the Missouri Pacific Railroad Company.

"5. The failure of the published notice required by G. S. 1949, 12-502 to name certain leaseholders and the Missouri Pacific Railroad Company does not void the proceedings to annex Fairfax Airport.

"6. Under the facts set forth in Finding of Fact No. 6, the Board of County Commissioners properly excluded from the area to be annexed the 50 acres of dikes owned by the Drainage District.

"7. The Drainage District is not aggrieved by the order of the Board of County Commissioners excluding from the area to be annexed the 50 acres

of dikes owned by the Drainage District and not excluding the approximately 12-15 acres of easements owned by the Drainage District.

"8. There has been no showing that the order of the Board of County Commissioners referred to in Finding of Fact No. 8 has caused any manifest injury to the Drainage District or to any leaseholder or any owner of any interest in the land included in the area to be annexed.

"9. The order of the Board of County Commissioners referred to in Finding of Fact No. 8 is affirmed."

The Drainage District, after filing its appeal in the district court, filed a motion for declaratory judgment challenging the validity of four previous ordinances extending the boundaries of the City. It challenges, in particular, Ordinance No. 41525 which brought the city limits adjacent to the airport. The Drainage District suggests that if this ordinance is held invalid the city limits are not adjacent to the airport and G. S. 1949, 12-501, under which the City proceeded, would not be applicable. The statute applies only "whenever any city desires to enlarge the limits thereof from territory adjacent thereto, . . ."

The first obstacle facing the Drainage District is that it has no legal standing to raise the issue. This court has held in a long line of decisions that the validity of an ordinance annexing territory to a city can only be challenged in an action brought in the name of the state by its proper officers.

In *Chaves v. Atchison*, 77 Kan. 176, 93 Pac. 624, it was held:

"The validity of proceedings taken by city officers under statutory authority extending the corporate boundaries of a city so as to annex a tract of land can only be questioned in a direct proceeding prosecuted at the instance of the state by proper public officers. The case of *Topeka v. Dwyer*, 70 Kan. 244, 78 Pac. 417, followed." (Syl.)

See, also, *Price v. City of McPherson*, 92 Kan. 82, 139 Pac. 1162 in which the two cases above mentioned are cited.

In *Smith v. City of Emporia*, 168 Kan. 187, 211 P. 2d 101, we held:

"In this jurisdiction actions questioning the validity of proceedings extending the corporate limits of a city cannot be maintained by private individuals and can only be prosecuted at the instance of the state by its proper officers." (Syl.)

And in the opinion, after reviewing the earlier decisions, said:

"Appellant advances numerous arguments, many of them plausible, as to why the courts should permit private individuals to attack the corporate integrity of a city. Most, if not all, of them have been considered and rejected in the decisions to which we have referred and for that reason require no specific

discussion here. It suffices to say we find nothing in any of them which would justify us in repudiating the rule, founded on public policy and which has been the settled law of this state for far more than half a century, that they cannot do so. If the consequences resulting from its application are as dire as he would have us believe it is indeed strange that the legislature of this state, which has unquestioned power to authorize individuals to maintain actions of such character, has not seen fit at repeated sessions to grant them that privilege." (p. 193.)

In the recent case of *State, ex rel., v. City of Kansas City,* 186 Kan. 190, 350 P. 2d 37, this court stated:

"We now come to the question of Quindaro's status in this proceeding. *In State, ex rel, v. City of Kansas City,* 169 Kan. 702, 719-721, 222 P. 2d 714, Quindaro, along with four rural high school districts of Wyandotte County, filed briefs *amici curiae* in support of plaintiff's attack on similar annexation ordinances affecting the Fairfax industrial district because of the resulting loss of taxes to Quindaro and the school districts. . . .

"The most favorable interpretation to be made of the pleadings of Quindaro and the intervenors indicates they are attacking the city's attempt to extend its corporate limits to include new territory, which is a reorganization of the city that in turn involves its corporate validity. Such an attack can only be made by the state. The landmark case of *Smith v. City of Emporia,* 168 Kan. 187, 211 P. 2d 101, 13 A. L. R. 2d 1272, makes this point crystal clear and includes a thorough discussion of many of the leading cases cited by the parties to this appeal. See, also, *Lampe v. City of Leawood,* 170 Kan. 251, 253, 254, 225 P. 2d 73.

"In *City of Blackwell v. City of Newkirk et al.,* 31 Okla. 304, 121 Pac. 260, the conclusion of the Oklahoma supreme court likewise was that only the state may question extensions of city limits and, as shown in the opinion (p. 329), this conclusion was based at least in part on decisions of our Kansas court." (pp. 197, 198.)

Even though a declaratory judgment action were a proper method of challenging the validity of a city ordinance, it would not lie in this case. Before an action for declaratory judgment can be maintained an actual controversy must exist. There can be no actual controversy in the absence of a proper party plaintiff. *Boeing Airplane Co. v. Board of County Comm'rs,* 164 Kan. 149 188 P. 2d 429, holds:

"There must be at least two parties who can assert rights which have developed or will arise against each other before an actual controversy can exist which is justiciable under our declaratory judgment act." (Syl. ¶ 2.)

There is an additional reason why the Drainage District's attempt to challenge the validity of the previous ordinances must fail. The validity of an ordinance extending the boundaries of a city cannot be attacked in a collateral proceeding.

See *Topeka v. Dwyer*, 70 Kan. 244, 78 Pac. 417, where it is held:

"Complete proceedings for the enlargement of the corporate area of a city, authorized by an act of the legislature, are not open to collateral attack in a prosecution for the enforcement of an ordinance of the city within the annexed territory so far as mere defects, informalities and irregularities, questions of good faith and good judgment, the finding of necessary facts, the determination of disputes of fact and like matters are concerned." (Syl. ¶ 2.)

See, also, *Fletcher v. Weigel*, 152 Kan. 104, 102 P. 2d 1055, where it is said:

". . . These statutes furnished the color of law and semblance of legal right ample and sufficient to sustain the annexation of the addition as against a collateral attack. Where a municipal corporation is acting under color of law, and its existence is not questioned by the state, it cannot be collaterally drawn in question by private parties. (*Topeka v. Dwyer*, 70 Kan. 244, 78 Pac. 417, *In re Short*, 47 Kan. 250, 27 Pac. 1005; *Horner v. City of Atchison*, 93 Kan. 557, 144 Pac. 1010.)" (p. 108.)

The Drainage District urges numerous objections challenging the validity of the order of the Board enlarging the boundaries of the City. Before considering the objections it might be well to review the statute giving the right to appeal from such order. The right to appeal is provided by G. S. 1949, 12-502a, which reads:

"Any owner of land sought to be taken into the limits of a city under the provisions of this act, who shall be aggrieved by the decision of the board of county commissioners may appeal to the district court of the same county in the manner and method as now provided by section 19-223, Revised Statutes of 1923."

G. S. 1949, 12-502, after providing for notice, states:

". . . On the day set the board of county commissioners shall proceed to hear testimony as to the advisability of making such addition, and upon such hearing, if said board of county commissioners shall be satisfied that the adding of such territory to the city will be to its interest and will cause no manifest injury to the persons owning real estate in the territory sought to be added, they shall so find; and thereupon the governing body of such city by ordinance may enlarge the limits thereof to include the territory so added: . . ."

It would appear that the term "manifest injury" as used in 12-502, *supra*, refers to the injury which is legally sufficient to cause the appellant to be "aggrieved" under 12-502a, *supra*.

The district court in a memorandum opinion presented an able discussion of this question. We quote pertinent portions of the memorandum:

"A party is aggrieved whose legal right is invaded by an act complained of or whose pecuniary interest is directly affected by the order. The term

refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of some burden or obligation. In this sense it does not refer to persons who may happen to entertain desires on the subject, but only to those who have rights which may be enforced at law and whose pecuniary interest may be affected. (2 Am. Jur. 941, Appeal and Error, Secs. 149-152; Black's Law Dictionary, 3rd ed.)

"In this case the appellant Drainage District is a quasi-public corporation, an arm of the State, created by the legislature to perform a function of government. In general it is authorized to sue and be sued, to make contracts, to borrow money, to issue bonds, to levy special taxes and assessments, to exercise the power of eminent domain, to own property, and to have exclusive control over all watercourses within its territorial limits for the purpose of preventing overflow and private property damage, and to do all things necessary to carry out its general powers (G. S. 1959 Supp., 24-407). But the particular powers granted to the Drainage District must be measured and limited within the purposes for which it was created. It has no authority which has not been clearly granted to it by the legislature and which is not necessary and proper to carry out the purposes for which it was created. Without discussing the question as to whether it has the authority to appeal in this case, it is difficult to see how it is aggrieved by the order complained of.

"It has no vested right to the territory under its jurisdiction except as given by statute in furtherance of the purposes for which it was created (*State ex rel. v. Kansas City,* 186 Kan. 190, 1. c. 198); and insofar as the powers and duties conferred upon the Drainage District are concerned, they are not abridged by reason of the annexation to the City. Within the scope of the statute creating it, the Drainage District will still have the same duties, powers, and exclusive jurisdiction as it had before, and it may still enforce its reasonable orders by mandamus or otherwise, even as against the City if necessary (*Drainage District v. Wyandotte County,* 117 Kan. 634, 1. c. 636; G. S. 1959 Supp. 24-307 [*sic*] [24-407] Ninth); nor will it be subjected to any tax burden or thereby be deprived of any of its revenue. For these reasons, it is my opinion that there has been no showing that the order complained of has caused any manifest injury to the appellant Drainage District, and the order of the Board of County Commissioners will be affirmed . . ."

If the Drainage District is not aggrieved it has no right to challenge the Board's order on appeal. Appeals are permitted only to correct material errors injuriously affecting the appellant.

In *Anderson v. Carder,* 159 Kan. 1, 150 P. 2d 754, we said:

"Appellant was not a proper intervenor in the injunction suit; he has no personal interest in the judgment rendered; he is not prejudiced or aggrieved thereby; the defendant, the real party in interest, is not appealing and the intervenor is not a proper party appellant."

. . . . . . . . . . .

"The question of what constitutes the necessary interest to give a person a right of appeal is often an interesting one. Ordinarily a person cannot appeal from a judgment unless he has a particular interest therein and is aggrieved or prejudiced thereby. Ordinarily his interest must be immediate and

pecuniary. (*McLeod v. Palmer*, 96 Kan. 159, 150 Pac. 535; *Cardin v. Apple*, 150 Kan. 162, 92 P. 2d 32; *In re Estate of Doyle*, 152 Kan. 23, 30, 103 P. 2d 52; 2 Am. Jur., Appeal and Error, §§ 149, 150, 152; 4 C. J. S., Appeal and Error, § 186.) Appeals are not allowed for the purpose of settling abstract questions, however, interesting or important to the public generally, but only to correct errors injuriously affecting the appellant. (2 Am. Jur., Appeal and Error, § 152; see, also, *Nicholas v. Lawrence*, 161 Va. 589, 171 S. E. 673; *Barriger v. Louisville Gas & Electric Co.*, 196 Ky. 268, 244 S. W. 690.)" (p. 4.)

Some of the objections raised by the Drainage District cover alleged grievances suffered by other parties with which the District is not concerned. A litigant on appeal cannot champion the rights of a party in which it has no interest. See *Heil v. Heil*, 40 Kan. 69, 19 Pac. 340, where it is held:

"Errors of the trial court, alleged as against only one of several defendants below, some of whom join in a petition in error, but the party against whom it is alleged the error was committed does not join in the petition in error, will not be considered for the benefit of those who bring the case here. If the ruling in this case was erroneous, it was prejudicial to the party solely and alone, who does not appear in this court seeking to have it reversed." (Syl.)

See, also, syllabus 3 of *Scott v. Linn*, 126 Kan. 195, 268 Pac. 84, which reads:

"Parties to an action cannot complain of erroneous proceedings against the rights of an infant not a party thereto where the attention of the court is not called thereto until after judgment, and where the rights of the parties calling the attention of the court to the matter are not affected by the proceedings against the infant."

The record discloses nothing that would indicate the order complained of has caused any manifest injury to the Drainage District, nor given it any cause to be aggrieved. This is all that is necessary to require an affirmance of the trial court's judgment under our comparatively recent decision in *City of Salina v. Thompson, Trustee of Mo. Pac. Rly. Co.*, 169 Kan. 579, 220 P. 2d 147, construing the involved statutory provisions (12-501, 12-502 and 12-502a, *supra*).

Notwithstanding the record fails to disclose any grievance on the part of the Drainage District we have, because of the seriousness with which able counsel argue their objections, carefully considered all questions raised and find nothing which would warrant the sustaining of such objections or justify our disturbing the findings of fact and conclusions of law as pronounced by the district court.

The judgment is affirmed.