**Robert J. POUND, Plaintiff,**

v.

**AIROSOL COMPANY, INC.,
et al., Defendants.**

**No. CIV.A. 02–2632CM.**

United States District Court,
D. Kansas.

Feb. 17, 2005.

Brett E. Nelson, George McCorkell Plews, Leonardo D. Robinson, Indianapolis, IN, Jeffrey J. Simon, Ronald D. Marney, II, Kansas City, MO, for Plaintiff.

Aaron C. McKee, John W. Cowden, Paul S. Penticuff, Kevin J. Odrowski, Kansas City, MO, Brian F. Huebsch, Denver, CO, Richmond M. Enochs, Wallace, Saunders, Austin, Brown & Enochs, Thayer, KS, for Defendants.

Tim Samra, Redlands, CA, pro se.

Eherp.Com Inc., pro se.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

On December 18, 2002, plaintiff Robert J. Pound brought several claims against several defendants regarding the sale and distribution of a pesticide called Black Knight. In one such claim, plaintiff brought suit under the citizen suit provision, 42 U.S.C. § 7604(a)(1), alleging violations of emissions standards set forth under the Clean Air Act, 42 U.S.C. § 7401 et seq. On March 10, 2004, this court granted plaintiff's Motion for Partial Summary Judgment against defendants Airosol Company, Inc. and Chad Brown, Robyn Markland, Pro·Exotics, Inc., Pro Exotics Reptiles, Inc. ("Separate Defendants") finding that, as a matter of law, these defendants' sale and distribution of Black Knight violated the Clean Air Act. Plaintiff also brought suits against these defendants alleging violation of the Lanham Act, 15 U.S.C. § 1125(a), and the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50–623, as well as negligent misrepresentation, negligence, and negligence per se. Pending before the court is defendant Airosol's Motion for Summary Judgment (Doc. 208) and Separate Defendants' Motion for Summary Judgment (Doc. 202).[1]

## I. Factual Background[2]

Plaintiff Robert J. Pound owns a reptile business called Pro Products, Inc. In the

---

1. Because defendant Airosol and Separate Defendants filed similar summary judgment motions and plaintiff filed a joint response, this court will address both motions simultaneously.

2. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

1980s, plaintiff started developing Provent–a–Mite, a product designed to treat and eradicate ectoparasites such as mites on reptiles. Plaintiff patented Provent–a–Mite in September of 2000 and began marketing and selling it that same year.

Airosol Company, Inc. (Airosol) manufactures, advertises, distributes, and sells the pesticide Black Knight. Black Knight is registered under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") (EPA Reg No. 901–82) for treatment of various household pests. Black Knight is not registered or approved for use in the treatment of snake mites or other pests that affect reptiles or other cold blooded animals, or for direct use on animals.

Separate Defendants breed and sell live reptiles, as well as sell reptile supplies, including Black Knight, through the Pro Exotics, Inc. storefront and website. Brown and Markland, named as individual defendants, are the owner and day-to-day manager of the business, respectively. Pro Exotics, Inc. was incorporated in 1994. Between November 2000 and January 2003, Pro Exotics, Inc. failed to file the correct paperwork with the Colorado Secretary of State to maintain incorporation, and was subsequently dissolved. In January of 2003, Separate Defendants again filed for corporate status, and Pro Exotics, Inc. was incorporated as a new corporation.

Black Knight is a direct competitor of Provent–a–Mite, as both products are sold to reptile enthusiasts for use on reptile ectoparasites. In the past, Separate Defendants, have promoted and advertised Black Knight for use as a pesticide for eradicating reptile mites on various websites, at reptile trade shows, and in reptile magazines. In addition, Pro Exotics gave its Black Knight customers or potential customers a copy of the "Pro Exotics Black Knight Mite Attack and Prevention Strategy," which was a six-page pamphlet written by Markland giving detailed descriptions about reptile mites, the problems associated with them, and directions for eradicating them using Black Knight. Included in the pamphlet was the following phrase: "As of 2002, the best weapon against a mite outbreak is Black Knight, period." Pro Exotics claims that Airosol was given a copy of this pamphlet.

Black Knight's label states that the product is not to be sprayed directly on animals. Separate Defendants claim they have used Black Knight on thousands of animals and experienced success with the eradication of snake mites. Both Airosol and Separate Defendants have made representations that Black Knight is appropriate for use in the treatment of reptile ectoparasites. On several occasions, Pro Exotics made representations to its customers that Black Knight was "safe" and "effective" for treating reptile ectoparasites. In addition, Separate Defendants have posted on their website that Black Knight is safe for use directly on reptiles, stating: "BK [Black Knight] has a more sophisticated delivery method that is safer [than Provent–a–Mite] for direct contact with animals" and "IF YOU APPLY PROVENT in the same way as i[sic] suggest applying Black Knight, you will have dead snakes. with [sic] BK, 99.9% of customers have used it safely and without a problem."

In addition, both Airosol and Separate Defendants have made representations that Black Knight is legal and approved for use on reptiles. Airosol and Separate Defendants have advised customers that Black Knight is a legal product, and defendants do not contest the fact that, pursuant to this court's March 10, 2004 Order granting plaintiff's Motion for Partial Summary Judgment, offers for sale, distribution, and offers for distribution of Black

Knight on or after January 1, 1994 are illegal. Prior to the filing of this lawsuit, Pro Exotics contacted Airosol to determine whether Black Knight was a legal product. Pro Exotics was assured by Airosol that they were in the process of having Black Knight relabeled with the EPA to be approved for use on reptiles. However, Pro Exotics was aware that Black Knight was not labeled for use on reptiles.

Prior to the filing of this lawsuit, plaintiff advised both Separate Defendants and Airosol that the sale and distribution of Black Knight "violated some laws." Plaintiff also contacted some sellers of Black Knight and explained that it is illegal to use or label Black Knight for treatment of reptiles or reptile ectoparasites and that Black Knight contains Class II substances banned under the Clean Air Act. In addition, plaintiff has published statements on various websites about Black Knight, claiming that Black Knight is not safe because it causes injury and health problems if used on animals, and that it is not specifically approved by the EPA for use on reptiles or for eradicating reptile ectoparasites.

Airosol has never promoted or advertised Black Knight to reptile owners. Airosol alleges that, when it learned that its customers were purchasing Black Knight for use on reptiles, the president of Airosol, Carl Stratemeier, told his employees that they were to inform customers that Black Knight was not labeled for that purpose. However, Airosol does not contest that it is aware that some of its customers continue to purchase Black Knight for use on reptiles.

In a letter from Airosol sent to many of its Black Knight customers, Stratemeier wrote: *"Even though BKRK* [Black Knight Roach Killer] *may be the best treatment for reptile ectoparasites,* Airosol has never advertised, advocated, claimed or encouraged the use of Black Knight for anything but the killing of roaches, ants, or other insects. BKRK's label warnings clearly state that the product is not to be sprayed on humans or animals (including reptiles), and nowhere advances the use as snake mite prevention." (emphasis added). Airosol contends that this letter was sent for the purpose of "reminding [Black Knight customers] that Black Knight was to be used for killing roaches, ants and other insects" and "informing them that Black Knight was not sold for use on reptiles." However, the letter begins with the following sentences: "You may have recently received a letter or call from Mr. Robert Pound or his attorney regarding Black Knight Roach Killer (BKRK), a product of Airosol Company, Inc. (Airosol). In his letter, Mr. Pound accuses Airosol of violating the Clean Air Act, mislabeling product and infringing on his patent, all of which Airosol vigorously denies." The letter goes on to discuss plaintiff's other assertions about Black Knight and ends with a request to contact Airosol if the recipient of the letter has received a letter or phone call from plaintiff so that Airosol may ascertain "just how many of you were contacted [by plaintiff] in total."

When asked about products used for the treatment of snake mites on reptiles in the spring of 2004, Airosol representatives told telephone callers that Black Knight was appropriate for this purpose, and that Airosol was aware that its customers used Black Knight on reptiles for treating snake mites.

Both Airosol and Separate **Defendants have made representations that Blank Knight was in the process of getting labeled for reptile use, although neither defendant provided any evidence that the process of applying for re-labeling had begun when there statements were made. Airosol still intends to seek.**

EPA approval for Black Knight use on reptiles.

Both Airosol and Separate Defendants have made representations that question the validity of plaintiff's Provent–a–Mite patent.

Separate Defendants have made representations that Black Knight is the same as Provent–a–Mite and that the two products use the same chemical. One such representation was made in a **website posting that stated: "Black Knight and provent a mite are 99% the SAME THING," and "they are BOTH** pesticides, with the same active ingredient." The active ingredient in Black Knight is d-phenothrin. The active ingredient in Provent–a–Mite is permethrin.

Plaintiff alleges that Separate Defendants have made representations that Provent–a–Mite and Permanone are the same products, although Separate Defendants respond by stating that they never represented that the two products are exactly the same and recognize that the two products have different delivery mechanisms.

Separate Defendants admit to observing adverse effects upon spraying reptiles with Black Knight, but argue that the effects are minimal because, at most, only six animals became temporarily disoriented and only one baby animal died after being sprayed with Black Knight.

Plaintiff admits that some reptile owners would not buy Provent–a–Mite because they do not like him or his tactics. In addition, plaintiff admits to being told that some reptile owners will not purchase Provent–a–Mite because it is too expensive. Plaintiff has little personal experience with Black Knight. He has only purchased one can of Black Knight from Airosol, but has not used it, and admits that he did not purchase Black Knight for personal or business use.

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest

upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Analysis

### A. Lanham Act

■ Plaintiff alleges that both Airosol and Separate Defendants have made the following materially false or misleading descriptions and representations in violation of the Lanham Act, 15 U.S.C. § 1125(a): (1) Black Knight is appropriate for use in the treatment of reptile ectoparasites and for use directly on animals; (2) Black Knight is legal and approved for use on reptiles; (3) Black Knight is in the process of getting labeled for reptile use; (4) plaintiff's patent is invalid and plaintiff withheld information from the patent office; and **(5) plaintiff sought to become a distributor of Black Knight and was denied. In addition,** plaintiff alleges that Separate Defendants have made the following additional materially false or misleading descriptions and representations: (6) Provent–a–Mite is a "copied derivative" of Black Knight and Provent–a–Mite uses the same active ingredients as Black Knight; (7) Black Knight is the same as Provent–a–Mite and the two products use the same chemical; (8) Provent–a–Mite and Permanone are the same products; and (9) Black

Knight is "safe" and defendants have made "thousands of applications without any harmful effects."

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), states:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Tenth Circuit has interpreted section 43(a) of the Lanham Act to require:

(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Sally Beauty Co., Inc. v. Beautyco., Inc.,* 304 F.3d 964, 980 (10th Cir.2002) (citing *Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1252 (10th Cir.1999)).

Section 43(a) of the Lanham Act allows for liability "by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a). The Tenth Circuit has interpreted this portion of the Lanham Act to require an injury by the plaintiff. *Sally Beauty Co., Inc.,* 304 F.3d at 980. Recovery for false advertising violations are governed by 15 U.S.C. § 1117, which provides for the recovery of "defendant's profits, any damages sustained by the plaintiff, and the costs of the action." 15 U.S.C. § 1117(a).

■ In support of their summary judgment motion, defendants argue that plaintiff is unable to prove any damages sustained as a result of defendants' alleged Lanham Act violations. In response, plaintiff asserts that defendants' materially false or misleading representations regarding Black Knight have injured, and continue to injure, plaintiff because Provent–a–Mite is the only legal pesticide directly competing with Black Knight, and therefore, any and all sales of Black Knight after January 1, 1994 to reptile customers directly result in lost customers and sales to plaintiff. Plaintiff substantiates this argument with an expert report by Constance Ward. Using the "yardstick" approach, Ward estimates plaintiff's losses by assuming a one-to-one sales loss by plaintiff. In other words, Ward assumes that, from the year 2000 through February 2004, each can of Black Knight sold by defendants amounts to a loss of the sale of two cans [3] of Provent–a–Mite by plaintiff. Using this one-to-one sales loss assumption, Ward estimates plaintiff's total lost profits from each sale of Black Knight amounts to $232,011.00.

In support of his approximation of damages, plaintiff cites *Brunswick Corp. v. Spinit Reel Co.,* **a Tenth Circuit case** which held that, where a Lanham Act violation "is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may be only an approximation," and, furthermore, that "evidence of the amount of damages may be circumstantial **and inerrant.**" 832 F.2d 513, 526 (10th Cir.1987) (citing *Eastman Kodak Co. v. S. Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1927)). **Finally, a one-to-one sales loss may provide "an upper range for an award of damages."** *Id.*

The court finds that plaintiff has correctly cited and applied *Brunswick.* As such, plaintiff is not required to prove actual damages to prevail on his Lanham Act claim, but may instead approximate his damages based on circumstantial or inexact information. The court acknowledges that plaintiff's estimation of damages seems to be quite speculative; it fails to consider relevant market factors such as price differences between the products, availability of plaintiff's product, other reptile pest products on the market, or alternative reptile pest control methods. However, when viewed in the light most favorable to the plaintiff, plaintiff's admittedly weak estimation of damages nevertheless creates a **genuine issue of material fact** as to whether plaintiff suffered any damages, or the extent of any damages suffered. For this reason, the court denies defendants' motions for summary judgment with respect to plaintiff's Lanham Act claim.

**B. Kansas Consumer Protection Act**

Plaintiff also brought suit against Airosol and Separate Defendants for violation

---

**3.** Ward applied the yardstick approach by volume. Each can of Black Knight contains twelve ounces, while each can of Provent–a–Mite contains six ounces. Therefore, Ward treated each can of Black Knight as the equivalent of two cans of Provent–a–Mite.

of the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50–623 *et. seq.* Plaintiff alleges that he was injured when defendants knowingly or negligently made false or misleading descriptions and representations regarding Black Knight.[4] Plaintiff is seeking the greater of actual damages or a civil penalty for each violation as provided by § 50–636(a), plus attorney's fees.

Defendants make several arguments in response to plaintiff's KCPA claim, including the contentions that plaintiff does not have standing to bring suit under the KCPA because plaintiff does not meet the definition of a consumer under the KCPA, that plaintiff is unable to prove that defendants' representations about Black Knight included representations they knew or should have known were false, and that plaintiff was not injured by an alleged violation of the KCPA. Rather than entertain a lengthy analysis regarding whether plaintiff is a consumer and whether defendants knowingly or negligently made false or misleading representations regarding Black Knight, the court will assume, viewing the facts in the light most favorable to the plaintiff, that plaintiff has met both of these requirements. Therefore, the court will focus on whether plaintiff meets the KCPA requirement of an "aggrieved" consumer.

**The meaning of the term "aggrieved" party" is clearly set forth under Kansas law.**

A party is aggrieved whose legal right is invaded by an act complained of or whose pecuniary interest is directly affected. The term refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of some burden or obligation. In this sense it does not refer to persons who may happen to entertain desires on the subject, but only to those who have rights which may be enforced at law and whose pecuniary interest may be affected.

*Finstad v. Washburn Univ. of Topeka,* 252 Kan. 465, 472, 845 P.2d 685 (1993) (quoting *Petition of Kansas City,* 190 Kan. 308, 314–15, 374 P.2d 35 (1962)).

Plaintiff alleges that he was aggrieved because defendants' allegedly false or misleading representations regarding plaintiff, Provent–a–Mite, and his patent on Provent–a–Mite, encourage patent infringement by others, discourage customers and potential customers from purchasing Provent–a–Mite, and encourage the purchase of Black Knight. Defendants argue, however, that plaintiff is unable to demonstrate a causal link between defendants' alleged KCPA violation and plaintiff's alleged injuries.

■ The KCPA allows private remedies under the KCPA by a "consumer who is aggrieved *by a violation* of this act." Kan. Stat. Ann. § 50–636(a) (emphasis added). However, plaintiff admittedly never opened or used the one can of Black Knight he ever purchased. Therefore, the issue here is whether plaintiff was aggrieved as a consumer of Black Knight by defendants' alleged violation of the KCPA.

**4.** Specifically, plaintiff alleges defendants made false or misleading representations which state or imply that Black Knight is: (1) "safe" and/or "effective" for use in the treatment of snake mites and other reptile ectoparasites; (2) lawful and/or approved by EPA under the Clean Air Act; (3) approved by EPA under the FIFRA for use on animals or in the treatment of snake mites and other reptile ectoparasites and (4) undergoing review by EPA for FIFRA approval for use in the treatment of snake mites and other reptile ectoparasites, that (5) Pound sought to become a distributor of Black Knight, (6) that Pound's United States Patent No. 6,121,318 titled "Mite and Tick Control for Reptiles" is invalid or was obtained through fraud, and (7) that Provent–a–Mite is not safe when used as directed.

In *Finstad,* the Kansas Supreme Court held that court reporting students who did not rely on, or were unaware of, a false statement, and who could not demonstrate any injury directly resulting from the false statement, were not aggrieved consumers, 252 Kan. at 472, 845 P.2d 685. Moreover, the court found that the district court did not err in holding that a causal connection is required to maintain a KCPA action. *Id.* at 474, 845 P.2d 685.

Here, plaintiff generally contends that he was injured in three ways. First, plaintiff asserts that he was injured by defendants' allegedly false or misleading representations regarding plaintiff, Provent–a–Mite and Black Knight, and that these representations encouraged plaintiff's customers and potential customers to purchase Black Knight while discouraging them from purchasing Provent–a–Mite. Even assuming that defendants' representations were false or misleading, and that plaintiff suffered injuries as a result of defendants' allegedly false or misleading representations, plaintiff's injuries are wholly and completely independent from his purchase of Black Knight as a consumer. The only injuries plaintiff claims he suffered are lost sales of Provent–a–Mite, which are injuries he suffered because plaintiff is a competitor of defendants, and not because plaintiff is a consumer of Black Knight. Thus, plaintiff has failed to demonstrate the causal connection between defendants' alleged violation of the KCPA and plaintiff's injuries as a consumer.

Similarly, plaintiff contends that he and his product were injured by false or misleading representations about plaintiff's patent because such representations serve to encourage patent infringement by others. Again, in his capacity as a consumer, plaintiff has not alleged that he suffered any injuries by defendants' alleged false or misleading representations. Moreover, plaintiff has not argued, much less demonstrated, how defendants' allegedly misrepresentations first encouraged patent infringement by others, and, more importantly, how such alleged encouragement resulted in injury to plaintiff.

Finally, plaintiff argues that defendants' allegedly false or misleading representations about Black Knight served to mislead plaintiff's customers, purportedly enticing them to purchase Black Knight rather than Provent–a–Mite. However, plaintiff has not asserted that he, himself, was misled into purchasing Black Knight. Therefore, any injuries he suffered as a competitor of Black Knight resulting from defendants' allegedly misleading or false statements bear no causal connection to defendants' alleged misrepresentations.

■ The court acknowledges that it is possible that other consumers were mislead by defendants' allegedly deceptive acts. Furthermore, the court understands that the intent of the KCPA is to protect consumers. *See* Kan. Stat. Ann. § 50–623(b) (stating that the purpose of the KCPA is "to protect consumers from suppliers who commit deceptive and unconscionable practices"); *Alexander v. Certified Master Builders Corp.,* 268 Kan. 812, 822, 1 P.3d 899 (2000). However, this court does not believe that the KCPA was intended to be used as a forum by which a plaintiff may bring suit on behalf of all other potentially misled consumers when plaintiff, himself, was not mislead or injured as a consumer.[5]

---

5.  Other jurisdictions' consumer protection statutes prohibit competitors from bringing suit under their respective consumer protection statute. *See, e.g., Fare Deals, Ltd. v.* *World Choice Travel.Com, Inc.,* 180 F.Supp.2d 678 (D.Md.2001) (finding no competitor standing under Maryland's Consumer Protection Act); *Colyer v. Trew,* 1982 WL 4419

Finding that plaintiff failed to meet his burden of proving that he is an aggrieved consumer under the KCPA, the court grants summary judgment in favor of defendants on plaintiff's KCPA suit.

## C. Tort Claims

Plaintiff also brought suit against Airosol and Separate Defendants for negligence and negligence per se. However, Plaintiff's Response to Summary Judgment Motions Filed by Airosol and the Pro Exotics Defendants (Doc. 231) failed to address these claims. Local rule 7.4. states that when "a respondent fails to file a response within the time required by Rule 6.1(e), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." D. Kan. R. 7.4. Accordingly, the court grants summary judgment on plaintiff's tort claims in favor of defendants.

## D. Brown and Markland as Individual Defendants

■ Individual defendants Brown and Markland also request summary judgment for the individual counts against them, arguing that, as employees of Pro Exotics, Inc., a corporation with limited liability, they are shielded from individual liability. Plaintiff argues that Brown and Markland are individually liable because Pro Exotics, Inc. was not a legal and bona fide corporation between November of 2000 and January of 2003.

"[T]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed. Civ. Pro. 17(b). Pro Exotics, Inc. was original-

ly incorporated under Colorado law. Therefore, this court will apply Colorado law in analyzing this issue.

Colorado statute dictates that a corporation may be administratively dissolved if the corporation does not comply with relevant statutory provisions, including failing to pay fees or file annual reports. Colo. Rev.Stat. §§ 7–114–202(1) & (2) and 7–114–201(a) & (b). "A corporation administratively dissolved continues its corporate existence but may not carry on any business except as appropriate to wind up and liquidate its business and affairs ... and to give notice to claimants." *Id.* § 7–114–202(3). After administrative dissolution, a corporation may apply for reinstatement within two years of the dissolution, and if effective, the reinstated corporation may carry on its business as if dissolution never occurred. *Id.* § 7–114–203.

■■ Colorado no longer recognizes do facto corporations. *Black Canyon Citizens Coalition, Inc. v. Bd. of County Comm'rs of Montrose County*, 80 P.3d 932, 933 (Colo.App.2003). Therefore, contrary to defendants' assertions, Colorado law does not extend corporate limited liability to individuals after the corporation is dissolved unless the corporation is reinstated within two years pursuant to Colo.Rev. Stat. § 7–114–203. Furthermore, "prior to the issuance of a certificate of incorporation there is no de facto corporate status regardless of a substantial or colorable attempt to comply with the law effecting the creation of a corporation." *Bowers Bldg. Co. v. Altura Glass Co., Inc.*, 694 P.2d 876, 878 (Colo.App.1984).

(Tenn.App. Feb.12, 1982) (holding that the plaintiff had no standing to sue its competitor for false advertising under Tennessee's Consumer Protection Act when the Act specifically limited recovery to consumers); *H.D. Oliver Funeral Apts., Inc. v. Dignity Funeral Servs., Inc.*, 964 F.Supp. 1033, 1039 (E.D.Va. 1997) (finding that Virginia's Consumer Pro-

tection Act does not confer standing to a competitor). The Kansas Legislature has not yet chosen to take this step, and this court is currently unwilling to follow these jurisdictions because it might be possible, however unlikely, for a consumer to suffer an injury as both a consumer and a competitor.

Pro Exotics, Inc. originally filed for incorporation in May of 1994. However, in November of 2000, Separate Defendants acknowledge that Pro Exotics, Inc. failed to file required paperwork with the Colorado Secretary of State and was consequently dissolved. In January of 2003, Separate Defendants again filed for corporate status and Pro Exotics, Inc. was reformed as a new corporation. However, because Separate Defendants failed to reinstate Pro Exotics, Inc. during the two years subsequent to November of 2000, Pro Exotics, Inc. was administratively dissolved and no reinstatement was possible. Thus, Separate Defendants' filing for incorporation in January of 2003 created an entirely new, completely separate corporation. Accordingly, between November of 2000 and January of 2003, no legal corporation existed to shield Brown and Markland from personal liability. Therefore, Brown's and Markland's motion for summary judgment fails to demonstrate entitlement to judgment as a matter of law.[6]

### E. Conclusion

This court hereby grants defendants' Motion for Summary Judgment on plaintiff's Kansas Consumer Protection Act and tort claims, and denies defendants' Motion for Summary Judgment on plaintiff's Lanham Act claim, as well as on the issue of Brown's and Markland's individual liability.

**IT IS THEREFORE ORDERED** that defendant Airosol's Motion for Summary Judgment (Doc. 208) and Separate Defendants Chad Brown, Robyn Markland, Pro Exotics, Inc., Pro Exotics Reptiles, Inc.'s

Motion for Summary Judgment (Doc. 202) are granted in part and denied in part.

---

**6.** Brown seems to argue that because his duties as corporate president of Pro Exotics, Inc. do not include the day-to-day operations of Pro Exotics, Inc., he has not been exposed to individual liability in this suit. However, Brown did not offer any evidence supporting this argument, and thus has failed to demonstrate either a genuine issue of material fact or entitlement to judgment as a matter of law.